# United States Court of Appeals
## For the First Circuit

No. 00-2286

UNITED STATES OF AMERICA,

Plaintiff, Appellee,

v.

RAMON DE-LA-CRUZ CASTRO,

Defendant, Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Salvador E. Casellas, U.S. District Judge]

Before

Lynch and Lipez, Circuit Judges,
and Woodlock,* District Judge.

William M. Palmer for appellant.
Thomas F. Klumper, Assistant United States Attorney, with whom Guillermo Gil, United States Attorney, and Jorge E. Vega-Pacheco, Assistant United States Attorney were on brief for appellee.

August 7, 2002

_____
*Of the District of Massachusetts, sitting by designation.

**LIPEZ, Circuit Judge**. Ramon De-La-Cruz Castro (Cruz Castro) appeals from the judgment entered by the district court pursuant to a written plea agreement. Asserting that Cruz Castro waived his right to appeal in the plea agreement, the government asks us to dismiss the appeal. Cruz Castro argues that we should disregard the waiver of appeal because it was not knowing and voluntary, and that we should vacate his judgment of conviction because of an oral agreement that he claims he made with the prosecution. Cruz Castro also claims that he only assented to the plea agreement because of the ineffective assistance of his counsel.

On the basis of the record before us, we find that Cruz Castro knowingly and voluntarily waived his right to appeal. Hence, we enforce the waiver and dismiss the appeal in accord with our precedent in United States v. Teeter, 257 F.3d 14 (1st Cir. 2001). We do not address the ineffective assistance of counsel claim which, consistent with our usual practice, must be pursued in a collateral proceeding.

## I.

On April 29, 1998, a grand jury indicted Cruz Castro (and two other defendants) for knowingly and intentionally possessing with intent to distribute 959.3 kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Although Cruz Castro entered a plea of not guilty in May 1998, he moved for a change of plea in December 1999, and entered a plea of guilty on January 4, 2000.

The plea agreement described the offense to which Cruz Castro pled guilty and stated that he could be sentenced to a term of imprisonment between ten years and life. However, it also stated that he could qualify for a downward departure to eight years if he complied with a "safety valve" provision by giving information to the government. Most pertinently to this appeal, the plea agreement contained the following language:

> Defendant Ramon de la Cruz Castro hereby agrees that if this Honorable Court accepts this Plea and Cooperation Agreement and sentences him according to its terms and conditions, defendant Ramon de la Cruz Castro waives and surrenders his right to appeal the judgment and sentence in this case.

Aware of this provision, the district court attempted to determine at the change of plea hearing whether Cruz Castro understood its scope and consequences. The district court first asked Cruz Castro if he understood that he was giving up his right to appeal "all or part" of his sentence, and he responded affirmatively. The district court also asked Cruz Castro's counsel if he had explained the plea agreement to his client in Spanish, and if he was satisfied that Cruz Castro understood the plea agreement. Counsel also responded affirmatively. Towards the end of the change of plea hearing, the district court also stated to Cruz Castro that, "under some circumstances you or the government may have a right to appeal any sentence that the Court imposes."

At the conclusion of the change of plea hearing, the district court accepted Cruz Castro's guilty plea. The plea agreement indicated that Cruz Castro would only be eligible for a downward departure (from 120 to 96 months of imprisonment) if he

complied with a safety valve provision by the time of his sentencing hearing:

> Should the Defendant meet all of the requirements of the safety valve provisions of guidelines section 5C1.2, including that . . . no later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, then the Defendant would be entitled to a further TWO (2) level reduction in his base offense level [in which case] the parties agree to a term of ninety-six (96) months [as] the appropriate sentence for disposition of this case.

On September 15, 2000, the district court held a sentencing hearing. There the court explored whether Cruz Castro had complied with the safety-valve provision. The court learned that Cruz Castro, intimidated by the "code of silence" prevailing at his prison, would not give the government any information about his or related criminal activities. However, he still claimed that he should receive the benefit of a downward departure. At the allocution phase of the sentencing hearing, the appellant told the sentencing court that Assistant United States Attorney Mark Irish, the prosecutor who had represented the government in connection with the change of plea but who had since left the office and consequently did not appear at the sentencing, orally modified the plea agreement between him and the government by telling him off the record that he would receive a sentence of 96 months without having to speak with the government about his crime. The defendant went into some detail about the circumstances of the alleged modification:

[Before the change of plea hearing] I asked counsel here and the prosecutor who at the time I believe was Mark Irish, he told me that he would guarantee that I would get 96 months, and that I didn't have to say anything, that I didn't have to speak at all . . . and . . . I told him I don't have to say anything else, because if I have to, then I won't sign. And with my counsel present and the prosecutor present they both said that I didn't have to say anything [and that] this was not a trick . . . and that it was clear that if I didn't get the 96 months then I could go forward with an appeal or that I would.

Cruz Castro stated that his attorney reiterated this assurance when he visited him in prison.

Cruz Castro also stated that he was disturbed to learn that the agreement he had signed was described as a "plea and cooperation agreement." He wanted that reference to cooperation out of the agreement, and he said that his counsel pledged to correct the mistake:

In the plea [agreement] there was a mistake where it stated that supposedly I was cooperating with the Court and I didn't know that because I don't know English and that information was given to me by the attorney of a codefendant of mine that I should send a motion because in the plea agreement in page five it stated that I was cooperating with the Court. If you could check that, and I told [my] counsel . . . [and] he prepared the motion on the 6/19, and he did not explain that to me that that was included in the agreement, had I known that I would not have signed. . . . He said it was a mistake he made.

The district court then asked Cruz Castro's counsel to "address the Court regarding the allegations made by the defendant." Although Cruz Castro had accused his counsel (along with the government) of misrepresenting the terms of the plea agreement, his counsel did not directly address that accusation.

-5-

Rather, he focused on the error in the plea agreement referring to a cooperation agreement:

> On several occasions [I] went to [visit Cruz Castro in prison] to explain to him the presentence report and the plea agreement, [and I] found that on the plea agreement on Page 5 a typographical error was made where he said he signed a witness cooperation agreement. [I] took this to the District Attorney office and they filed an addendum which I gave copy to him, which specifically states that in no way this defendant has cooperated with the government, in any matter.

Cruz Castro's counsel said that he had told Cruz Castro, while he was in prison, that he could only receive the benefit of the downward departure to a 96 month sentence if he cooperated with the government:

> [He was] afraid that physically something will happen to him if he will comply with the safety valve. I explained to him that that was not the case, that it was just a personal thing that in order to go below the minimum in this case, in order for us to comply with the government and with the Court for in order to him to get the 96 months, in no circumstances, your Honor, this defendant would allow to arrange to be interviewed in order to comply. [I tried to get the government to agree to a 96 month sentence], but the government didn't agree and said that we were bound by what we signed, that he had to comply.

Apparently concerned about a possible misunderstanding by Cruz Castro, the district court asked his counsel whether he had explained to Cruz Castro "the difference between a cooperating agreement and the safety valve which involves a debriefing by the government."[1] He indicated that he had.

---

[1] Although the record does not disclose the precise difference to which the district court was referring in this case, we recognize that a cooperation agreement may require the defendant to offer more extensive assistance to government prosecutors than the

-6-

The district court also asked Assistant United States Attorney David Rivera, who represented the government at the sentencing hearing, to comment on Cruz Castro's assertions. Invoking the integration clause in the plea agreement, Rivera responded that the "plea agreement . . . does contain very explicit language . . . regarding the fact that no other agreements are made that are beyond this plea agreement . . . unless they are in writing."

The district court then affirmed its earlier finding that the plea in this case was knowing and voluntary and imposed the 120 month sentence called for by the plea agreement if Cruz Castro did not qualify for a lesser sentence under the safety valve provision. Cruz Castro appeals, asking us to disregard his waiver of appeal and vacate the judgment and sentence because they did not reflect the terms of the oral agreement he claims to have made with the government.

**II.**

As noted, the government argues that we should dismiss Cruz Castro's appeal because he signed a plea agreement waiving his

---

debriefing envisioned in the safety valve provision. Nevertheless, defense counsel's characterization of safety valve debriefing as "just a personal thing", with its suggestion that such a debriefing need only concern the defendant's own participation in the criminal venture, is not wholly accurate. U.S.S.G. 5C1.2(a)(5) obligates the defendant to provide "the government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or common scheme . . . ." (emphasis supplied).

right to appeal. We therefore must address the validity of this waiver.

In determining whether to enforce a presentence waiver of appellate rights, "[w]e look first to confirm that the written plea agreement signed by the defendant contains a clear statement elucidating the waiver and delineating its scope." United States v. Teeter, 257 F.3d 14, 24 (1st Cir. 2001). Second, we determine whether the district court "question[ed] the defendant specifically about her understanding of the waiver provision and adequately inform[ed] her of its ramifications." Id. This prong of Teeter reflects the Federal Rules of Criminal Procedure, which direct the court to "address the defendant personally in open court and inform the defendant of, and determine that the defendant understands . . . the terms of any provision in a plea agreement waiving the right to appeal or to collaterally attack the sentence" before accepting a guilty plea. Fed. R. Crim. P. 11(c)(6). Finally, we may refuse to enforce the waiver if doing so would work a miscarriage of justice. Teeter, 257 F.3d at 25-26.

## A. Clear Language in the Plea Agreement

The plea agreement challenged here clearly meets the standards of the first prong of the Teeter test. The agreement states:

> Defendant Ramon de la Cruz Castro hereby agrees that if this Honorable Court accepts this Plea and Cooperation Agreement and sentences him according to its terms and conditions, defendant Ramon de la Cruz Castro waives and surrenders his right to appeal the judgment and sentence in this case.

Cruz Castro's attorney affirmed that he had translated the agreement for Cruz Castro and made him aware of all of its clauses. There can be no doubt that the plea agreement contained "a clear statement elucidating the waiver and delineating its scope." Id. at 24. Cruz Castro effectively concedes this point on appeal, eschewing any argument that the language of the plea agreement was unclear.

## B. Adequate Assurance of Cruz Castro's Understanding of the Waiver

Cruz Castro focuses his argument on the second prong of the Teeter test--whether the district court "question[ed] the defendant specifically about [his] understanding of the waiver provision and adequately inform[ed] [him] of its ramifications." Id. He argues first that the district court did not adequately inform him of the ramifications of the waiver. He also argues that the district court effectively abrogated the waiver, or at least left its import in doubt, by telling him that he did have the right to appeal in some circumstances.

At the change of plea hearing, in an effort to assure that Cruz Castro understood the scope of the waiver and its implications, the district court asked, "Do you understand that by entering into this plea agreement and entering a plea of guilty you have given up your right to appeal all or part of your sentence?" Cruz Castro argues that this seemingly straightforward question was misleading. Given the intricacy of his argument, we quote it at some length:

> [T]he question fundamentally misled Mr. Cruz Castro as to the nature of his waiver of his right to appeal his sentence because the phrase "all or part of" as used in the question allowed two separate meanings to be attached to the question. The question could reasonably be understood by Mr. Cruz Castro as suggesting "you have waived your right to appeal all of your sentence or part of your sentence." It could alternatively be equally reasonably understood to ask whether Mr. Cruz Castro understood he had waived his right to appeal any part of his sentence. In this case, it was natural for Mr. Cruz Castro to understand his potential sentence of imprisonment as having two parts: (1) the first part to be the inevitable minimum 96-month sentence he would receive if sentenced under the "safety valve" provision of the USSG [United States Sentencing Guidelines] and (2) the second part as comprising any additional length of time he might be sentenced to serve above and beyond that minimum of 96 months. If Mr. Cruz Castro understood his sentence as having two potential parts in this way and also took the Judge's question to have [the] first meaning stated above, as would be reasonable, the question would only have informed Mr. Cruz Castro that part of his sentence of imprisonment could not be appealed.

The plain language of the district court's inquiry does not bear the weight of this strained interpretation. If one cannot appeal all of a sentence, or part of it, there is plainly nothing left of the sentence to appeal. Even when the phrase is considered in the context described by Cruz Castro, it is difficult to understand how the judge's use of the phrase "all or part" could lead to Cruz Castro's alleged misunderstanding of the statement. We reject this argument.

Cruz Castro's second objection to the court's inquiry relates to an exchange between the court and the defendant which began with this question: "Do you understand that under some circumstances you or the government may have a right to appeal any

sentence that the court imposes?" Cruz Castro answered in the affirmative. He now argues that "[t]hat question was flawed because it failed to identify . . . what categories of circumstances (such as government misconduct, ineffective representation) constituted 'some circumstances.'" Absent such explicit qualifications, Cruz Castro says, the reminder abrogated the waiver provision.

We said in Teeter that "[i]f a presentence waiver of appellate rights is in place the court should be especially careful in its choice of words, taking pains to explain to the defendant that her right to appeal is circumscribed by her preexisting waiver." Id. Hence "broad assurances to a defendant who has waived her appellate rights (e.g., "you have a right to appeal your sentence") . . . muddy the waters and tend to instill false hope," and thus are "to be avoided." Id.

There was no such broad assurance here. Context is important, and several elements crucial to the Teeter decision not to enforce the waiver of appellate rights at issue in that case are missing here. In Teeter,

> [d]uring the change-of-plea colloquy, the district
> court questioned the appellant concerning her
> overall understanding of, and acquiescence in, the
> terms of the plea agreement, but did not direct her
> attention to the waiver provision. . . . [T]he
> court hampered, no doubt, by the newness of Rule
> 11(c)(6) and the consequent lack of any
> precedential guidance--neither directed the
> appellant's attention to the waiver provision nor
> discussed it with her. . . .
>     Given the court's failure to make inquiry into
> the waiver, its unfortunate contradiction of the
> waiver's terms, and the lack of any correction,
> then or thereafter, we cannot say with the

-11-

> requisite assurance that the appellant's surrender
> of her appellate rights was sufficiently informed.

Id. at 26-27 (footnote omitted).  Whereas the district court in Teeter gave the defendant an unqualified assurance that she could appeal, the district court here only indicated that Cruz Castro could appeal "in some circumstances."  That statement is correct in the sense that we may entertain an appeal in order to correct a "miscarriage of justice" even in the face of a knowing and voluntary waiver of appeal.  See id., 257 F.3d at 25 (and discussion below).

Moreover, whereas the court in Teeter failed entirely to assure that Teeter knowingly and voluntarily agreed to the waiver, the district court here asked Cruz Castro and his counsel if he knew "that by entering into this plea agreement and entering a plea of guilty [he] would have waived or given up [his] right to appeal all or part of [his] sentence."  Cruz Castro answered, "Yes, sir."  The district court also determined that Cruz Castro's counsel had "explained this agreement to Cruz Castro in Spanish and [was] satisfied that he [understood] it."

Taken in context, the district court's reminder to Cruz Castro that he could appeal "under some circumstances" cannot reasonably be understood as a direct contradiction of the tenor of the waiver.  Id. at 27 (finding that the waiver was not knowing and voluntary only after determining that the district court "directly contradicted the tenor of the waiver provision").  We conclude that the terms of the plea agreement and the colloquy at the change of

-12-

plea hearing support the conclusion that Cruz Castro's waiver of appellate rights was both knowing and voluntary.[2]

## C. Miscarriage of Justice

We may refuse to enforce a knowing and voluntary waiver of appellate rights if doing so would work a miscarriage of justice. Teeter, 257 F.3d at 25-26. However, as Teeter enjoins, the miscarriage of justice reservation "will be applied sparingly and without undue generosity." Id. at 26. As we explained in Teeter, the miscarriage of justice reservation "lessen[s] what the government sees as the prime benefit of its bargain: the automatic cutoff of debate and the opportunity to get appeals dismissed on motion." Id. If the government had to defend fully on appeal every miscarriage of justice challenge to a waiver of appeal, the

---

[2] We note that the district court did not have the benefit of our Teeter decision, handed down eighteen months later, when it accepted the change of plea in this case. Nevertheless, we find that its handling of the waiver of appeal explanation anticipated and was consistent with Teeter. Moreover, we note that the form of the inquiry followed the script laid out in the Benchbook for U.S. District Court Judges (4th ed. 1996, March 2000 rev.) published by the Federal Judicial Center. The Benchbook suggests that when taking pleas of guilty, "if the plea agreement involves a waiver of the right to appeal the sentence, ask the defendant: . . . ."

> Do you understand that by entering into this agreement and entering a plea of guilty you will have waived or given up your right to appeal or collaterally attack all or a part of this sentence.

Id. at 73 (emphasis in original). The Benchbook also contains the suggestion that "[t]he court should discuss the specific terms of the waiver with the defendant to ensure that the waiver is knowingly and voluntarily entered into and that defendant understands the consequences." Id.

-13-

very act of defending against that claim would deprive the government of the benefit of its waiver of appeal bargain.[3]

Here, Cruz Castro claims that we should undo his entry of plea and vacate his conviction because of an alleged oral agreement with the prosecution for a shorter term of incarceration than the one contemplated by the written plea agreement. In pressing this claim, he argues that the district court erred either in rejecting, at the end of the sentencing hearing, his claim of such an oral modification, or in failing to give him an opportunity to develop the record on this claim more fully. Cruz Castro treats this oral modification claim as the merits of his appeal, to be addressed after he establishes the unenforceability of his waiver of appeal because of deficiencies in the court's explanation of that waiver. As the government recognizes, however, the underlying logic of his oral modification claim is that his reliance on an oral agreement with the prosecution means that he did not enter the written plea agreement knowingly and voluntarily, and hence it would be a miscarriage of justice to enforce against him the waiver of appeal provision included in that written agreement.

We reject that logic and his request that we review on direct appeal the decision of the trial court rejecting his claim of an oral modification of the written plea agreement. For analytical purposes, we treat the clause in the plea agreement

_____

[3] We also sounded a cautionary note for defendants in <u>Teeter</u>: ". . . by appealing after promising not to do so, defendants will risk giving the government an option to disclaim a plea agreement, if it wishes to do so." <u>Teeter</u>, 257 F.3d at 25.

-14-

waiving appellate rights as an independent clause of the agreement, subject to the discrete inquiry on knowingness and voluntariness set forth in Parts II.A. and II.B. of this opinion. Except for miscarriage of justice review, the validity of the appellate waiver does not depend on whether other clauses of the plea agreement were entered into knowingly and voluntarily. There may be some case, on particular facts, where it would be a miscarriage of justice that a defendant entered a plea agreement based on a mistake of fact. However, miscarriage of justice review is not available here because, as a threshold matter, there is in this appellate record no serious question presented of a miscarriage of justice.

We cite three considerations that demonstrate Cruz Castro's inability to establish his miscarriage of justice claim on this record. First, the district court had before it Cruz Castro's plea agreement which contained the following integration clause:

> This written agreement constitutes the complete Plea Agreement between the United States, the defendant, and defendant's counsel. The United States has made no promises or representations except as set forth in writing in this Plea Agreement and the parties deny the existence of any other terms and conditions not stated herein.

At the change of plea hearing, Cruz Castro's counsel attested that he "carefully translated and reviewed every part [of] this Plea Agreement with the defendant." We have said previously that "[w]here, as here, an unambiguous plea agreement contains an unqualified integration clause, it normally should be enforced according to its tenor. That means, of course, that an inquiring court should construe the written document within its four corners,

-15-

'unfestooned with covenants the parties did not see fit to mention.'" <u>United States</u> v. <u>Alegria</u>, 192 F.3d 179, 185 (1st Cir. 1999) (quoting <u>United States</u> v. <u>Anderson</u>, 921 F.2d 335, 338 (1st Cir. 1990)).

Second, at his change of plea hearing, Cruz Castro explicitly denied the existence of any oral agreement with prosecutors:

> THE COURT: Do you understand the terms of the plea agreement?
> DEFENDANT: Yes, sir.
> THE COURT: Does the plea agreement represent in its entirety all of your understandings with the government?
> DEFENDANT: Yes, sir.
> ***
> THE COURT: Has anyone made any promise or assurance to you of any kind in an effort to induce you to plead guilty and sign the plea agreement in this case?
> DEFENDANT: No, sir.

Third, in opposition to the integration clause in the plea agreement and the disavowal at the change of plea hearing of any promise from the prosecution outside of the plea agreement, Cruz Castro offers only his eleventh hour claim of a side deal with the prosecution. This type of claim, grounded in a belated factual assertion and raised to undo a result previously acknowledged by the defendant in writing and in colloquy with the court, falls far short of demonstrating a serious question of "miscarriage of justice" as contemplated by <u>Teeter</u>.[4] There being no basis to

---

[4] Disclaiming any intent to be exhaustive, <u>Teeter</u> suggests that we determine whether an alleged error constitutes a miscarriage of justice by assessing "the clarity of the [alleged] error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact

-16-

invoke full miscarriage of justice analysis, we do not engage in any further review of the district court's rulings.  Instead, we will enforce Cruz Castro's knowing and voluntary waiver of his right to appeal.

**III.**

In addition to his general attack on the plea agreement, Cruz Castro also claims that his plea agreement is invalid because his counsel did not offer him effective assistance.  As Teeter recognized, a claim "that the plea proceedings were tainted by ineffective assistance of counsel" is an illustration of an instance where an appellate court may refuse to honor the waiver. 257 F.3d at 25 n.9.  Nonetheless, for other reasons, explained below, consideration of the claim is not now appropriate.

"[T]he two-part Strickland v. Washington test applies to challenges to guilty pleas based on ineffective assistance of counsel."  Hill v. Lockhart, 474 U.S. 52, 58 (1985).  First, the defendant must demonstrate that "counsel's representation fell below an objective standard of reasonableness."  Strickland v. Washington, 466 U.S. 668, 687-88 (1984).  Second, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill, 474 U.S. at 59.

---

of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result."  Teeter, 257 F.3d at 26.

At the allocution phase of his sentencing hearing, Cruz Castro alleged that his counsel and the prosecutor had assured him before the change of plea hearing that he "didn't have to say anything" in order to receive a 96 month sentence. Cruz Castro alleges that his counsel's misrepresentation of the plea agreement, along with his failure to admit this misrepresentation at the sentencing hearing, indicate that his counsel's performance fell below "an objective standard of reasonableness." Strickland, 466 U.S. at 688. He asserts further that he only pled guilty because his counsel did not inform him that the judge had to respect the written terms of the plea agreement.

Although Cruz Castro petitions us to consider this ineffective assistance of counsel claim on direct appeal, we agree with the government that a "collateral proceeding would be the appropriate" setting for the presentation of this claim. "[E]ven after a trial is completed, we do not entertain ineffective assistance claims on direct appeal absent an evidentiary record that allows us to evaluate the fact-specific allegations." United States v. Genao, 281 F.3d 305, 313 (1st Cir. 2002) (citing United States v. Woods, 210 F.3d 70, 74 (1st Cir. 2000)). The evidentiary record here is not complete enough to allow us to evaluate Cruz Castro's allegations of ineffective assistance of counsel. A collateral proceeding under 28 U.S.C. § 2255, "in which the parties and the district court can address factual matters relevant to the issue," is the proper setting for Cruz Castro's ineffective assistance of counsel challenge to a waiver of appellate rights.

-18-

<u>Id.</u> (citing <u>United States</u> v. <u>Jadusingh</u>, 12 F.3d 1162, 1169-1170 (1st Cir. 1994)).

**IV.**

Applying <u>Teeter</u>, 257 F.3d 14 (1st Cir. 2001), we conclude that Cruz Castro's waiver of his right to appeal was knowing and voluntary. The language of the waiver in the plea agreement was clear, and the district court inquired at the change of plea hearing in compliance with Rule 11(c)(6) of the Federal Rules of Criminal Procedure to ensure that Cruz Castro understood the consequences of the waiver. There is no serious question presented in this appellate record of a miscarriage of justice precluding enforcement of the waiver of appeal. We therefore enforce the waiver and dismiss Cruz Castro's appeal.

**Appeal Dismissed.**