# United States Court of Appeals
## For the First Circuit

No. 05-2425

UNITED STATES OF AMERICA,

Appellee,

v.

CARLOS H. SOTO-CRUZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

Before

Boudin, Chief Judge,
Torruella, Circuit Judge,
and Hansen,* Senior Circuit Judge.

Héctor L. Ramos-Vega, Research and Writing Specialist, with whom Patricia A. Garrity, Assistant Federal Public Defender, and Joseph C. Laws, Jr., Federal Public Defender, were on brief, for appellant.
Marcos López, Assistant United States Attorney, with whom Jacqueline D. Novas, Assistant United States Attorney, Nelson Pérez-Sosa, Senior Appellate Assistant United States Attorney, and H.S. García, United States Attorney, were on brief, for appellee.

June 7, 2006

*Of the Eighth Circuit, sitting by designation.

**HANSEN**, **Senior Circuit Judge**.  Carlos H. Soto-Cruz appeals the 144-month sentence he received after he pleaded guilty to mail and securities fraud.  See 18 U.S.C. §§ 1341, 1348.  Because Soto-Cruz knowingly and voluntarily waived the right to appeal his sentence in his plea agreement, we dismiss his appeal.

## I.

Soto-Cruz, who worked his way out of a poor and troubled childhood to earn a Ph.D. in philosophy, became a registered stockbroker in 1989 for Paine Webber.  He later worked for Dean Witter Reynolds, Inc., which eventually merged with Morgan Stanley.  In 1991, Soto-Cruz began what turned into a twelve-year-long scheme to defraud his clients out of at least $58 million.  He advised at least ten different individual and institutional clients to invest in low-risk securities, including mortgage-backed securities issued by the Government National Mortgage Association (GNMA).  He then funneled his clients' investments through fictitious corporate accounts that he opened and controlled and into high-risk investments, keeping the profits of the risky investments for himself.  Soto-Cruz was able to perpetuate the scheme for nearly thirteen years, through the Dean Witter/Morgan Stanley merger, and even while working under several different supervisors.  Soto-Cruz's scheme resulted in actual losses to his clients, including at least two banks, of more than $10 million.

Soto-Cruz was indicted for thirty-six counts of mail, wire,

and securities fraud in March 2004.  On October 4, 2004, Soto-Cruz entered into a written plea agreement, in which he agreed to plead guilty to counts one through twenty (alleging separate counts of mail fraud) and count thirty-six (alleging securities fraud).  He also agreed to forfeit $51 million worth of real estate and bank accounts.  The government agreed to dismiss the remaining counts.  The plea agreement contained a stipulation of the applicable U.S. Sentencing Guidelines (USSG) factors, including a 20-level enhancement for an actual loss exceeding $7 million, and a stipulation to the resulting sentencing range of 121 to 151 months.  The government agreed to recommend a sentence at the lower end of the agreed-upon applicable sentencing range.

Soto-Cruz entered into the plea agreement after the Supreme Court decided Blakely v. Washington, 542 U.S. 296 (2004). The plea agreement specifically provided "that the Court shall impose a sentence in accordance with the applicable provision(s) of the Sentencing Guidelines" (Appellant's App. at 52), and stated that the "defendant is aware that the defendant's sentence is within the sound discretion of the sentencing judge and will be imposed in accordance with the Guidelines" (Id. at 53).  Soto-Cruz agreed "to waive all rights under Blakely," and "agree[d] to have his sentence determined under the Sentencing Guidelines." (Id.) Finally, Soto-Cruz agreed that if the court "accept[ed] this agreement and sentence[d] him according to its terms and conditions, [he]

waive[d] and surrender[ed] his right to appeal the conviction and sentence." (Id. at 62.)

The district court held a change of plea hearing on October 7, 2004, and accepted Soto-Cruz's guilty plea. Soto-Cruz was sentenced in April 2005, after the Supreme Court decided Booker v. United States, 543 U.S. 220 (2005). The district court applied the Guidelines as advisory, as required by Booker. Despite the government's recommendation for a 121-month sentence, the district court sentenced Soto-Cruz to 144 months of imprisonment after considering the now advisory Guidelines range (121 to 151 months) and the other 18 U.S.C. § 3553(a) sentencing factors. Soto-Cruz appeals his sentence.

We agree with the government that Soto-Cruz validly waived his right to appeal his sentence. "[P]lea-agreement waivers of the right to appeal from imposed sentences are presumptively valid (if knowing and voluntary)," subject to our inherent power to disregard them in order to avoid a miscarriage of justice. United States v. Teeter, 257 F.3d 14, 25-26 (1st Cir. 2001). Soto-Cruz "candidly admit[s] that he entered into the waivers knowingly and voluntarily." (Reply Br. at 11.) He argues, however, that the district court's statement at the end of his sentencing hearing – that he had the right to appeal his sentence if he thought it to be illegal or unreasonable – negated the plea waiver. See Teeter, 257 F.3d at 26-27 (declining to enforce a plea agreement appeal

-4-

waiver).

In <u>Teeter</u>, we were concerned that contradictory statements by a district court about a defendant's right to appeal despite an appeal waiver may call into question the requirement that a waiver must be knowing and voluntary. In <u>Teeter</u>, the district court failed to ensure at the change of plea hearing that the defendant understood the consequences of the appeal waiver, as required by the then-recent amendments to Rule 11 governing plea colloquies. The court compounded that error at the sentencing hearing by stating without qualification that the defendant had "a right to appeal any sentence I impose." <u>Teeter</u>, 257 F.3d at 27. We held that the district court's failure to discuss the appeal waiver, coupled with the inconsistent statements at the sentencing hearing, called into question whether the defendant's surrender of her right to appeal was sufficiently informed to bind her. <u>Id.</u>

In this case, Soto-Cruz "concede[s] that the Magistrate Judge carefully addressed him at the [October 2004] plea hearing to make sure he understood the implications and consequences of the waivers." (Reply Br. at 12.) Consequently, unlike <u>Teeter</u>, there are no Rule 11 issues or concerns in this case. At the April 2005 sentencing hearing, the district court informed Soto-Cruz that he could appeal his sentence if he thought the sentence violated the law or was unreasonable. We held in <u>Teeter</u> that

> [w]hile broad assurances to a defendant who has waived
> [his] appellate rights (e.g., "you have a right to appeal

> your sentence") are to be avoided – they muddy the waters and tend to instill false hope – they do not effect a per se nullification of a plea-agreement waiver of appellate rights.

Teeter, 257 F.3d at 25. The context in which such a statement is made is important to our determination of whether the statement is sufficiently contradictory to an already agreed-upon, examined, and accepted appeal waiver so as to render the waiver nugatory. See United States v. De-La-Cruz Castro, 299 F.3d 5, 11-12 (1st Cir. 2002).

The district court's statement in this case is not such a "broad assurance." Rather, its statement about Soto-Cruz's appeal rights was limited to the appeal of a sentence that Soto-Cruz thought was in violation of the law or was unreasonable. Courts have long recognized that appeal waivers do not prevent a defendant from appealing a sentence that would result in a miscarriage of justice, such as a sentence imposed in violation of the law. See United States v. Johnson, 347 F.3d 412, 414 (2d Cir. 2003) (refusing to enforce appeal waiver against defendant's claim that his sentence was based on a constitutionally impermissible factor), cert. denied, 540 U.S. 1210 (2004); United States v. Andis, 333 F.3d 886, 892 (8th Cir.) (en banc) (recognizing a narrow exception to the enforceability of an appeal waiver for an allegedly illegal sentence), cert. denied, 540 U.S. 997 (2003). Thus, the district court's statement about the limited circumstances under which Soto-Cruz could appeal his sentence does not negate the enforceability

-6-

of his appeal waiver. See De-La-Cruz Castro, 299 F.3d at 12 (holding that the district court's statement that the defendant could appeal his sentence "under some circumstances" was correct insofar as waivers do not prevent the correction of a miscarriage of justice, and thus the statement did not negate the defendant's appeal waiver).

Alternatively, Soto-Cruz argues that enforcement of the appeal waiver would work a miscarriage of justice because the district court denied his request to present, in a closed hearing, mitigation evidence and evidence of his background. According to Soto-Cruz, enforcement of agreed-upon mandatory Guidelines to his post-Booker sentence would likewise work a miscarriage of justice. "The miscarriage of justice reservation 'will be applied sparingly and without undue generosity.'" De-La-Cruz Castro, 299 F.3d at 13 (quoting Teeter, 257 F.3d at 26). Some considerations that guide our determination include the clarity, gravity, and character (i.e., factual or legal) of the error; the impact of the error on the defendant and on the government; and whether the defendant consented to the result. Teeter, 257 F.3d at 26.

We agree with the district court that the proposed mitigation evidence would not have affected Soto-Cruz's sentence. Soto-Cruz wanted to introduce evidence at the sentencing hearing that tended to show that others were responsible for part of the losses in an effort to reduce the agreed upon and stipulated to 20-level

increase to his base offense level. He belatedly claims that he was pressured by his supervisors to continue his scheme, and that the failure of Morgan Stanley's internal controls to expose his wrongdoing increased the amount of the losses. Such evidence would have been directly contradictory to his signed plea agreement, in which Soto-Cruz agreed that the actual losses from his conduct exceeded $10 million and further specifically agreed to the 20-level enhancement for a loss of between $7 million and $20 million. Soto-Cruz also explicitly agreed to the resulting 121- to 151-month sentencing range. A defendant waives his right to challenge sentencing factors when he stipulates to the facts supporting the sentencing factor. See United States v. Serrano-Beauvaix, 400 F.3d 50, 54 (1st Cir.), cert. denied, 126 S. Ct. 106 (2005). Indeed, such a challenge would likely result in a breach of the agreement by the defendant. See United States v. Rodríguez-González, 433 F.3d 165, 168 (1st Cir. 2005) ("[A] special problem exists where . . . a defendant seems to disavow his stipulations without seeking to set aside the plea agreement."). Denying Soto-Cruz the opportunity to introduce evidence that would have contradicted the stipulations he made in the plea agreement and solemnly affirmed in open court at his plea proceeding did not work a miscarriage of justice.

We likewise reject Soto-Cruz's claim that the Supreme Court's Booker decision, issued after Soto-Cruz entered into his plea

agreement and before the district court sentenced him, somehow renders enforcement of his appeal waiver a miscarriage of justice. Soto-Cruz explicitly recognized that the constitutionality of the Guidelines was in question at the time he entered into his plea agreement, and he agreed to waive his right to appeal his sentence as well as any claims under Blakely. Indeed, the Magistrate Judge advised Soto-Cruz at his change of plea hearing that the Supreme Court had heard argument in Booker the prior Monday, stating that "[n]obody knows how the Supreme Court will rule on that, but I do have to advise you that in theory you may have several rights . . . but at this time you are waiving any rights to have the jury determine your sentencing guideline calculations, if that were to be the law as determined by the Supreme Court." (Appellee's Br. at 18 (quoting the change of plea hearing).) When asked if he understood that he was waiving the possibility of the Supreme Court so holding, Soto-Cruz responded, "Thoroughly and several times, yes." (Id.)

That the Supreme Court decided Booker differently than Soto-Cruz (or most of us) anticipated does not make his plea agreement unknowing or involuntary. Indeed, other Courts of Appeals have held defendants to appeal waivers that were entered into prior to Blakely. See, e.g., United States v. Griffin, 418 F.3d 881, 882 (8th Cir. 2005) ("The fact that [the defendant] did not anticipate the Blakely or Booker rulings does not place the issue outside the

scope of his waiver." (internal marks omitted)); United States v. Cardenas, 405 F.3d 1046, 1048 (9th Cir. 2005) (rejecting a claim that an appeal waiver entered in 2000 was invalidated by Booker's change in the sentencing laws because "a change in the law does not make a plea involuntary and unknowing"). Unlike the defendants in those cases, Soto-Cruz was sentenced pursuant to Booker under an advisory Guidelines regime. Because he received the benefit of Booker, the waiver of any Blakely claims cannot have resulted in a miscarriage of justice.

Nor can Soto-Cruz's claim that his sentence is unreasonable satisfy the miscarriage of justice exception. Based on the Guidelines range and the other § 3553(a) factors, the district court imposed a sentence slightly above the middle of the advisory Guidelines range. We recently explained that although a within-Guidelines range is not "per se reasonable," "the [G]uidelines cannot be called just 'another factor' in the statutory list." United States v. Jimenez-Beltre, 440 F.3d 514, 518 (1st Cir. 2006) (en banc). Soto-Cruz engaged in a very long-term fraudulent scheme, using his relationship of trust as a stockbroker to defraud his clients and friends, the betrayal of which, in his own words, amounted to treason. While he is now very remorseful, he only admitted to his conduct after being caught. That others within his organization may have encouraged him or failed to stop him does not change his own culpability. A much belated and half-hearted

-10-

assertion that "the boss made me do it" does not negate the extensive acts Soto-Cruz took to perpetuate his fraud. The sentence imposed is not unreasonable and does not result in a miscarriage of justice. The appeal waiver is enforced, and the appeal is dismissed.

**Dismissed**.