**Not for Publication in West's Federal Reporter**

# United States Court of Appeals

## For the First Circuit

No. 09-1964

UNITED STATES OF AMERICA,

Appellee,

v.

RAFAEL LARA-JOGLAR, a/k/a Picu, a/k/a Rafito, a/k/a Pito,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Aida M. Delgado-Colón, U.S. District Judge]

Before

Lynch, Chief Judge,
Howard and Thompson, Circuit Judges.

Geoffrey M. Raux, Michael J. Tuteur, Matthew A. Ambros and
Foley & Lardner LLP, on brief for appellant.
Nelson Pérez-Sosa, Assistant U.S. Attorney, Julia M.
Meconiates, Assistant U.S. Attorney, and Rosa Emilia Rodríquez-
Vélez, United States Attorney, on brief for appellee.

October 5, 2010

**Per Curiam**.  This is Rafael Lara-Joglar's direct appeal from his conviction and sentence for his participation in a multi-defendant drug-trafficking conspiracy.  The defendant's principal arguments on appeal are that his guilty plea was involuntary and unknowing and that his plea agreement as a whole was unconscionable.  We will discuss those arguments before addressing the enforceability of the appeal waiver in his plea agreement because, if the guilty plea or the plea agreement as a whole is invalid, then the appeal waiver provision of the agreement is obviously invalid as well.

The parties disagree as to the applicable standard of review of these claims.  The government argues that, because the defendant did not seek to withdraw his guilty plea before sentencing, this court's review of the validity of his plea is only for plain error.  The defendant's opening brief is silent on the standard of review (in violation of Rule 28(a)(9)(B) of the Federal Rules of Appellate Procedure), but his reply brief argues that, even though the claims were not preserved, a de novo standard of review applies.  Because we conclude that the guilty plea and plea agreement were valid under either standard, we need not resolve that disagreement.

The major common premise of this group of arguments is that although the defendant's own participation in the underlying offense was allegedly limited, he was charged along with 58 co-

defendants with participating in a drug-trafficking conspiracy involving large amounts of drugs, guns (including machine guns), and several murders and that the government had massive physical, audio-visual, and documentary evidence that might unfairly be attributed to him, especially given the potentially self-serving testimony of at least five cooperating witnesses, resulting in a much higher sentence than he received by pleading guilty. A further allegedly coercive circumstance was the court's summary denial of his newly appointed counsel's motion to continue the trial after his original counsel was forced to withdraw, due to a conflict of interest, less than three weeks before trial. He argues that those circumstances coerced him into pleading guilty rather than going to trial and facing the likelihood of "guilt by association"; that, in light of those circumstances, the court should have taken additional steps to ensure that his plea was voluntary and knowing; and that these same circumstances forced him to accept the government's proposed plea agreement, which he characterizes as "unconscionable."

"It cannot be gainsaid that a defendant's decision to enter a guilty plea is sometimes influenced by his assessment of the prosecution's case." Ferrara v. United States, 456 F.3d 278, 291 (1st Cir. 2006). But that common motive for pleading guilty "cannot form the basis for a finding of involuntariness," unless "the defendant's misapprehension of the strength of the

-3-

government's case results from some particularly pernicious form of impermissible conduct." Id. The allegedly improper conduct that the defendant attributes to the government here is primarily that it brought a multi-defendant conspiracy prosecution. That alone, of course, is not impermissible. While various courts, including this one, have recognized the risks of such prosecutions--namely, that the jury will find individual, presumptively innocent defendants guilty by virtue of their association with their more obviously culpable co-defendants--they have done so primarily in the context of requiring that certain safeguards be imposed to prevent such risks from being realized. See, e.g., Richardson v. Marsh, 481 U.S. 200, 211 (1987) (holding that where a nontestifying co-defendant's out-of-court confession does not facially incriminate another defendant, it can be admitted in a joint trial only with a limiting instruction and redacted to eliminate any reference to the other defendant's existence); Bruton v. United States, 391 U.S. 123, 135-36 (1968) (holding that where a nontestifying co-defendant's out-of-court confession does facially incriminate another defendant, it cannot be admitted in a joint trial even with a limiting instruction); United States v. Ofray-Campos, 534 F.3d 1, 24-31 (1st Cir.) (vacating defendants' convictions where the court told the jury, without any limiting instruction, that 37 co-defendants were in prison for participating in the alleged conspiracy), cert. denied, 129 S. Ct. 588 (2008).

-4-

Although the defendant claims that he should have been made aware of those safeguards at his change-of-plea hearing, no such detailed description was required. Rule 11 requires only that the court inform the defendant of "his right at trial to confront and cross-examine witnesses," Fed. R. Crim. P. 11(b)(1)(E), which has been found to be satisfied where the court merely "touched on" that right and the defendant expressed no confusion. United States v. Moriarty, 429 F.3d 1012, 1020 n.5 (11th Cir. 2005). The Constitution requires even less. Ward, 518 F.3d at 83 & n.13. Here, the court not only mentioned those rights but explained them, at some length, in layman's language. That explanation was more than sufficient.

The defendant further objects to the court's use of the words "anyone" or "someone" as being too narrow to include the possibility that "it was the coercive circumstances--brought on by the Government's tactics--that compelled [him] to accept the oppressive terms in the plea agreement." However, even in a potentially more coercive, package-plea situation, which was not present here, the general inquiry as to whether "anyone" forced the defendant to plead guilty has been held sufficient. United States v. Mescual-Cruz, 387 F.3d 1, 9-10 (1st Cir. 2004); cf. United States v. Martinez-Molina, 64 F.3d 719, 734 (1st Cir. 1995) (finding inquiry as to whether the "prosecutor" forced a defendant

to plead guilty insufficiently broad to cover the possibility that he was coerced to do so by his co-defendants).

The final allegedly "coercive circumstance" that the defendant points to is that, less than three weeks before the scheduled trial date, the court summarily denied newly appointed defense counsel's motion for a continuance of the trial. Ordinarily, denial of a continuance of trial is within the broad range of the district court's discretion, <u>United States</u> v. <u>Mangual-Santiago</u>, 562 F.3d 411, 429-30 (1st Cir. 2009); but an unexplained denial may be an abuse of that discretion, <u>id.</u> at 430-31.

Here, although the court initially gave no reasons for denying the motion, it later explained that it had appointed this particular attorney because he had experience in criminal litigation and knowledge of criminal law in general and of this case in particular (through his earlier, brief representation of another defendant) and would therefore be able to "go through the evidence in the case immediately, and make an accurate assessment of where [the defendant's] case stood in terms of the complete scenario of the case" and could do so "rapidly." Denying a continuance in those circumstances was within the court's discretion.

As to the unconscionability of the plea agreement, the defendant alleges that the government refused to negotiate the terms of the plea agreement with him and that the terms it offered

were unreasonably favorable to the government.  Those allegations are unsupported by the record, which indicates that the parties engaged in extensive, good-faith plea negotiations and that the terms of the final agreement, far from being "unconscionable," were highly favorable to the defendant in that, absent the agreement, he was exposed to a mandatory minimum of ten rather than five years and a maximum of a life sentence rather than the 156-month sentence jointly recommended in the agreement, the best deal offered to any similarly situated defendant.  The plea agreement and the guilty plea in general were therefore not so coercive as to be involuntary.

The threshold issue as to the remainder of the defendant's appellate arguments is the enforceability of his appeal waiver; if it is enforceable, then we need not--and should not--reach the other issues that the defendant raises on appeal. United States v. Borrero-Acevedo, 533 F.3d 11, 18 (1st Cir.) ("[A]n inquiry into the merits is exactly what a waiver of appeal blocks." (internal quotation marks omitted)), cert. denied, 129 S. Ct. 587 (2008).  We will therefore address that issue next.

Presentence waivers of appeal are enforceable if the waiver was "knowing" and "voluntary" and if enforcing it would not result in a "miscarriage of justice." United States v. Teeter,

257 F.3d 14, 24-25 (1st Cir. 2001).[1]  In determining whether the waiver was knowing and voluntary, we evaluate whether the written plea agreement "contains a clear statement elucidating the waiver and delineating its scope" and whether the district court "inquire[d] specifically at the change-of-plea hearing into any waiver of appellate rights."  Id. at 24; see also Fed. R. Crim. P. 11(b)(1)(N) (requiring such an inquiry).

Here, the defendant does not challenge the clarity of the written waiver, which provided that if the court "accepts this Plea Agreement and sentences [the defendant] according to its terms, conditions and recommendations, [he] waives and surrenders his right to appeal the judgment and sentence in this case."  Nor could he successfully mount such a challenge since we have repeatedly upheld the clarity of nearly identically worded waivers.  See, e.g., González-Colón, 582 F.3d at 127; United States v. De-La-Cruz Castro, 299 F.3d 5, 10 (1st Cir. 2002).

Rather, in arguing that the appeal waiver itself was unknowing and involuntary, the defendant focuses on the alleged insufficiency of the court's explanation of the waiver at the

---

[1]Because the government does not invoke the plain-error standard that would otherwise apply to an unpreserved challenge to the enforceability of an appeal waiver, Borrero-Acevedo, 533 F.3d at 13, we apply the Teeter standards without the plain-error overlay.  See United States v. Edelen, 539 F.3d 83, 85 n.1 (1st Cir.), cert. denied, 129 S. Ct. 427 (2008); United States v. Chandler, 534 F.3d 45, 49 n.3 (1st Cir. 2008).

-8-

change-of-plea hearing and at sentencing. The record of those hearings, however, reveals no such deficiencies.

At the change-of-plea hearing, the court specifically brought the appeal waiver to the attention of the defendant and his co-defendant, whose agreement apparently contained an identically worded waiver. The court correctly explained the waiver, as applied to each defendant's circumstances, as follows:

> [I]f I sentence you Mr. Lara to 156 months and Mr. Aponte if I sentence you to 108 months concurrent, then you will accept that as the final sentence. You will not be asking a higher Court to review what I have done or how I made the analysis of the sentencing guidelines or what w[ere] the factors that l[ed] to any sentence, to that sentence that I imposed. Which means this sentence will be firm and final.

Id.

The defendant argues that, by using the word "concurrent," the court created confusion as to whether Lara's recommended 60-month sentence on Count 7 would be concurrent with or consecutive to his 96-month sentence on Count 1. However, since the court specifically referred to a sentence of 156 months for Lara, it was clear that the number 156 referred to the total recommended sentence on both counts (96 plus 60), and that the word "concurrent" applied only to co-defendant Aponte's recommended sentence, which was previously described as concurrent with his sentences on related federal and state offenses. Not only did Lara

-9-

express no confusion with that explanation, any inference that he was confused is precluded by the court's earlier repeated explanations that the mandatory 60-month sentence on Count 7 would be consecutive to the parties' recommended 96-month sentence on Count 1 and by the defendant's own accurate explanation of the meaning of "consecutive" in his own words.

The defendant goes on to argue that "[t]he waters were further muddied" by the court's advice, at sentencing, that "<u>were [he] to appeal</u> the judgment in this case [he had] ten days, [he could] ask attorney Vega to file, [he could] do it pro se or [he could] ask the Clerk of Court to file it on [his] behalf" and that "<u>[w]ere [he] to pursue an appeal</u>, Mr. Vega could do it or any other attorney from the Court[, and that,] [i]n addition[,] [he could] ask for authorization to proceed in forma pauperis" (emphases added). That conditional advice, however, was offered only "out of an abundance of caution" and was immediately prefaced by the following statement (omitted from the defendant's brief): "The sentence [the court] imposed [w]as pursuant to the plea agreement stipulated between the parties so that I take it that the waiver of appeal is triggered and that waiver is totally enforceable." Neither the defendant nor his attorney objected to or sought clarification of that statement. In that context, nothing the court said at sentencing "muddied" its previous clear explanation of the appeal waiver at the change-of-plea hearing. Rather, in

-10-

fulfilling its obligation under Rule 35(j)(1) to advise the defendant of "any right to appeal," the court did precisely what we prescribed in these circumstances, namely, to be "especially careful in its choice of words, taking pains to explain to the defendant that h[is] right to appeal [wa]s circumscribed by h[is] preexisting waiver." Teeter, 257 F.3d at 25. The court's comments, taken as a whole, thus fell far short of the "blanket assurance about the right to appeal" that we have cautioned against. Id. Therefore, the defendant's arguments that his waiver of appeal was unknowing are unavailing.

The defendant further faults the district court for failing to inquire separately as to the voluntariness of the appeal waiver (in addition to asking whether "anyone forced [him] or compelled [him] in any way[2] to accept the terms and conditions" of the plea agreement; whether "someone forced [him] in any way or manner . . . to accept [the government's] version of facts"; and, more generally, whether "someone in any way or fashion forced [him] to make the decision of pleading guilty"). That claim for more specificity fails.

"Although specific attention to the issue of voluntariness in any plea proceeding is highly desirable, there is

_____

[2]The phrase "in any way" was misleadingly omitted from the defendant's brief. That omission coupled with the one noted above leads us to remind counsel of their responsibility of candor to the court. See Model Rules of Prof'l Conduct R. 3.3; Amstar Corp. v. Envirotech Corp., 730 F.2d 1476, 1486 (Fed. Cir. 1984).

-11-

no specific script that must be followed." Ward, 518 F.3d at 86. There is no requirement in Rule 11 or otherwise that the court specifically ask whether a defendant's appeal waiver was voluntary; Rule 11(b)(1)(N) requires only that the court determine whether a defendant "understands" the terms of any such waiver, which was done here. Although Rule 11 does require the court to "address the defendant personally in open court and determine that the plea is voluntary," Fed. R. Crim. P. 11(b)(2) (emphasis added), even that general inquiry is not constitutionally mandated. Ward, 518 F.3d at 82. Moreover, although not required to do so, the court here did ask the defendant whether "anyone forced or compelled [him] in any way to accept the terms and conditions of this contract that [he had] made with the government," and that question immediately followed the discussion of the appeal waiver.

Because the first two Teeter factors are thus satisfied, the only remaining potential barrier to enforcing the appeal waiver is if doing so would "work a miscarriage of justice." Teeter, 257 F.3d at 25. But the defendant's opening brief is virtually silent on that point; the only allusions to that standard are in a parenthetical following a case citation and in a footnote. His reply brief cites the exception but develops no argument as to how it applies here. By not directly making a miscarriage-of-justice argument in his opening brief and belatedly mentioning but not developing it in his reply brief, the defendant arguably waived the

-12-

application of that exception. <u>United States</u> v. <u>Hall</u>, 557 F.3d 15, 20 n.3 (1st Cir.), <u>cert. denied</u>, 129 S. Ct. 2849 (2009); <u>United States</u> v. <u>Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990).

Nevertheless, applying the relevant factors, including "'the clarity of the alleged error[s], [their] character and gravity, [their] impact on the defendant, any possible prejudice to the government, and the extent to which the defendant acquiesced in the result,'" <u>United States</u> v. <u>González-Colón</u>, 582 F.3d 124, 129 (1st Cir. 2009) (quoting <u>United States</u> v. <u>Gil-Quezada</u>, 445 F.3d 33, 37 (1st Cir. 2006)), we have considered whether foreclosure of either of the remaining arguments raised on appeal[3] would be so unjust as to satisfy the appropriately demanding miscarriage-of-justice standard, and we have concluded that no such injustice would result.

In sum, the defendant's guilty plea and plea agreement were valid, his appeal waiver was knowing and voluntary, and enforcing the waiver to preclude his remaining arguments on appeal would not work a miscarriage of justice. Accordingly, the district court's judgment is <u>affirmed</u>.[4] <u>See</u> 1st Cir. R. 27.0(c).

---

[3]Those arguments are that the court erred in imposing a leadership enhancement and that 18 U.S.C. § 924(c) violates the Second Amendment.

[4]The panel has unanimously concluded that oral argument is unnecessary. <u>See</u> Fed. R. App. P. 34(a)(2); 1st Cir. R. 34.0(b).