**UNITED STATES of America,**
**Appellee,**

v.

**Francisco Antonio GIL–QUEZADA,**
**Defendant, Appellant.**

**No. 05–1252.**

United States Court of Appeals,
First Circuit.

Submitted Jan. 24, 2006.

Decided April 14, 2006.

Guillermo A. Macari–Grillo on brief for appellant.

H.S. Garcia, United States Attorney, and Nelson Pérez–Sosa, Assistant United States Attorney, on brief for appellee.

Before SELYA, LIPEZ and HOWARD, Circuit Judges.

SELYA, Circuit Judge.

Defendant-appellant Francisco Antonio Gil–Quezada (Gil) appeals from a judgment entered by the United States District Court for the District of Puerto Rico in this criminal case. The government asks us to dismiss the appeal because Gil, in a written plea agreement (the Agreement) that preceded his change of plea and ensuing sentence, explicitly waived any right of appeal. Gil's riposte is that the waiver was neither knowing nor voluntary and, thus, should not be enforced. Concluding, as we do, that the waiver is effective and that Gil's claims do not warrant an exception to its plain terms, we dismiss the appeal.

The basic facts are largely undisputed. On April 12, 2004, a federal grand jury in the District of Puerto Rico returned an indictment charging Gil and four other persons with knowingly conspiring to possess five or more kilograms of cocaine with intent to distribute. *See* 21 U.S.C. §§ 841(a)(1), 846. Gil originally maintained his innocence. On the day that his trial was to begin (September 27, 2004), however, he entered into the Agreement and proceeded to change his plea to a plea of guilty.

The Agreement described in some detail the crime of conviction, Gil's role in it, and the possible sentence. Gil and the government agreed that he would be held accountable for at least fifteen but not more than fifty kilograms of cocaine. That spread normally would have produced a base offense level of 34. *See* USSG § 2D1.1(c)(3). However, Gil negotiated a

further reduction of the base offense level to 32, corresponding to five to fifteen kilograms of cocaine. *See id.* § 2D1.1(c)(4).[1]

Gil and the government also agreed that Gil would be eligible for a reduction of the base offense level for acceptance of responsibility, *see id.* § 3E1.1(a), and could apply for a further reduction under the so-called "safety valve" provisions, *see id.* §§ 2D1.1(b)(7), 5C1.2(a). Were he to receive these reductions—a matter as to which the Agreement contained no guarantee—his adjusted offense level would drop to 28. When combined with his criminal history category, that would correspond to a guideline sentencing range (GSR) of 78–97 months. *See id.* ch. 5, pt. A (sentencing table). Should he fail to achieve these reductions, however, he would be subject to a sentence of no less than the statutory mandatory minimum of 120 months. *See* 21 U.S.C. § 841(b)(1)(A).

The Agreement contained the usual covenants. Among other things, Gil offered assurances that he was satisfied with his legal representation, that his counsel had rendered effective assistance, that his guilty plea was freely and voluntarily made, and that his change of plea was not induced by any threats or unrevealed promises. He also agreed to waive certain rights. In addition to a *Blakely* waiver, *see Blakely v. Washington*, 542 U.S. 296,

124 S.Ct. 2531, 159 L.Ed.2d 403 (2004),[2] he waived his right to confront the witnesses against him, to invoke the prophylaxis of the Fifth Amendment, and to a jury trial. Pertinently, he also waived his right to appeal. That waiver memorialized his agreement that, so long as the district court .accepted the Agreement and sentenced him within the ambit of its terms and conditions, he "waive[d] and surrender[ed] his right to appeal the judgment and sentence in this case."

At the change-of-plea hearing, the district court conducted a thorough inquiry into Gil's understanding of the Agreement and the waivers contained therein. The court led Gil, step by step, through the Agreement and questioned him closely, through an interpreter, to ascertain whether he comprehended its scope and provisions. The court also queried Gil's counsel to ensure that he had discussed the Agreement thoroughly with Gil. When all was said and done, the court accepted the guilty plea and commissioned the preparation of a presentence investigation report.

On December 15, 2004, a probation officer interviewed Gil. During the interview, Gil intimated for the first time that his counsel had pressured him into pleading guilty. When Gil's attorney became aware of this allegation, he moved to withdraw

---

1. The Agreement was never actually modified to reflect the reduced drug quantity. At sentencing, however, the district court noted the discrepancy between the stipulated drug quantity and the stipulated base offense level. Relying on the fact that the sentencing guidelines were advisory rather than mandatory, *see United States v. Booker*, 543 U.S. 220, 245, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), the court accepted the negotiated base offense level of 32. Both sides acquiesced in this variance.

2. Specifically, the *Blakely* waiver provided that Gil:

(i) agrees to have his sentence determined under the Sentencing Guidelines; (ii) waives any right to have facts that determine his offense level under the Guidelines (including facts that support any specific offense characteristic or other enhancement or adjustment) alleged in an indictment and found by a jury beyond a reasonable doubt; (iii) agrees that facts that determine the offense level will be found by the court at sentencing by a preponderance of the evidence and that the court may consider any reliable evidence, including hearsay; and (iv) agrees to waive all constitutional challenges to the validity of the Sentencing Guidelines.

and to postpone the sentencing hearing. The district court denied both motions.

The disposition hearing was held on January 21, 2005. Gil moved pro se for the appointment of new counsel, claiming that his attorney had (i) pressured him into accepting the Agreement; (ii) failed to discuss the case adequately with him; and (iii) advised him that, if he signed the Agreement, he would receive a 27–month incarcerative sentence. The district court questioned both Gil and his counsel about the allegations. The court determined that the lawyer had at all times acted professionally and had rendered competent services. Going a step further, the court specifically found that Gil had entered his guilty plea knowingly and voluntarily. The court thereupon denied Gil's motion.

Gil received a 78–month sentence—a sentence at the bottom of the GSR projected in the Agreement. He now appeals.

A waiver of appellate rights is valid if a "defendant enter[ed] into it knowingly and voluntarily." *United States v. Teeter*, 257 F.3d 14, 24 (1st Cir.2001). In *Teeter*, we established a three-pronged test for determining whether that standard has been met and, if so, whether the waiver should be enforced. *Id.* at 24–26. First, the written plea agreement must clearly set forth the scope and terms of the waiver. *Id.* at 24. Second, the district court, at the change-of-plea hearing, must call the waiver to the defendant's attention and question him closely in order to ensure that he has a full understanding of the waiver provisions and that he has knowingly and voluntarily elected to waive his right of appeal. *Id.; see* Fed.R.Crim.P. 11(b)(1)(N) (requiring such a colloquy). Third, even if the plea agreement and the change-of-plea colloquy pass muster, we will not enforce the waiver if doing so would work a miscarriage of justice. *Teeter*, 257 F.3d at 25.

In his brief, Gil concedes that the relevant language of the Agreement is clear and unambiguous. Moreover, our independent review confirms that the written waiver satisfies the first prong of the *Teeter* test. Gil's argument focuses on the second prong, claiming that certain of the district court's remarks misled him into believing that he was not relinquishing his appellate rights. We examine the particulars of this claim.

At the change-of-plea hearing, the district court provided Gil with an interpreter, who translated the proceedings into Spanish. With the help of the interpreter, the court reviewed the provisions of the Agreement, including the waiver of appellate rights, in order to ascertain that Gil fully understood what he had signed. Gil readily confirmed his understanding and appreciation of the waiver of appellate rights. The court also asked Gil's attorney (who was fluent in both Spanish and English) if he had read and explained the Agreement to Gil in the Spanish language. Counsel replied that he had reviewed the Agreement with Gil "page by page, paragraph by paragraph" and that Gil was "aware of the consequences of entering this plea."

Notwithstanding the clear terms of the Agreement and the judge's frank discussion of the document with him at the change-of-plea hearing, Gil contends that the judge made three remarks—two questions at the change-of-plea hearing and one statement at the disposition hearing—that misled him into believing that he had in fact preserved his right to appeal. We turn next to these remarks.

In this case, what the judge said at sentencing is irrelevant to our waiver inquiry. If Gil waived his appellate rights, he did so by signing the Agreement and demonstrating his understanding and ap-

preciation of the waiver provision at the change-of-plea hearing. The judge's comments at the disposition hearing, nearly four months later, have no bearing on whether Gil knowingly and voluntarily waived his appellate rights when he entered the plea.[3]

■ The judge's questions at the change-of-plea hearing are, of course, a horse of a different hue. First, the judge asked Gil: "Do you understand that by entering into this plea agreement you may have waived or given up your right to appeal or collaterally attack all or part of the sentence?" Second, the judge asked Gil: "Do you also understand that under some circumstances you or the government may have the right to appeal any sentence that this court imposes?" Gil asseverates that these questions gave him the impression that the effect of the waiver was uncertain.

We examined a virtually identical scenario in *United States v. De–La–Cruz Castro*, 299 F.3d 5, 10–12 (1st Cir.2002). There, we found such questions not misleading because the court had otherwise confirmed that the defendant understood the import of the waiver provision. *See id.* at 11–12 (cautioning that the judge's statements should not be wrested from their contextual moorings). In view of the extensive questioning that occurred during the plea colloquy and the repeated assurances that Gil and his counsel gave to the sentencing judge, it is implausible to conclude that the challenged questions were misleading.

Here, moreover, the judge's questions incorporated substantially correct factual assumptions. The first question, which assumed as a fact that the defendant would

be relinquishing his "right to appeal or collaterally attack" both his sentence as a whole and any part of it, was unexceptionable. The second question, which assumed as a fact that, notwithstanding the waiver, an appeal remained available in certain extreme circumstances (say, to redress illegality or a miscarriage of justice) was also correct. *See id.* at 12; *Teeter*, 257 F.3d at 25. We conclude, therefore, that Gil's waiver of appellate rights was valid under the first two prongs of the *Teeter* test.

■ This conclusion does not end our odyssey. We have the power to refuse to enforce a waiver of appellate rights if doing so would work a miscarriage of justice. *Teeter*, 257 F.3d at 25. That is not the case here.

■ The miscarriage of justice exception requires a strong showing of innocence, unfairness, or the like. That exception must "be applied sparingly and without undue generosity." *Id.* at 26. When mulling whether a miscarriage of justice is in prospect, we consider, among other things, the clarity of the alleged error, its character and gravity, its impact on the defendant, any possible prejudice to the government, and the extent to which the defendant acquiesced in the result. *Id.*

Here, Gil's brief is silent as to whether enforcement of his waiver would work a miscarriage of justice. We could, therefore, simply end our inquiry at this point. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir.1990) (explaining that arguments not adequately briefed are deemed abandoned). In an abundance of caution, however, we have tried to sift the rudiments of his claim from the record.

---

**3.** One can imagine that, in certain circumstances, a statement made at sentencing could explicate the meaning of a statement made earlier or shed light upon the defendant's understanding at that time. The statement alluded to here, however, is not of that genre.

This tamisage reveals that Gil's principal claim is that the district court erred in refusing to appoint new counsel for him. This claim rests on allegations that his attorney never discussed the merits of the case with him but, rather, pressured him into accepting the Agreement and told him (falsely) that, if he did so, he would receive a maximum sentence of 27 months. If these allegations had substance, the denial of his motion to appoint new counsel might sink to the level of a miscarriage of justice and, thus, justify an exception to the waiver. *Cf. Teeter,* 257 F.3d at 25 n. 9 (noting that appellate courts must remain free to grant relief from waivers of appellate rights in egregious cases). The record, however, debunks the allegations that Gil proffered in support of his motion to substitute. We explain briefly.

After Gil advanced these same claims in his pro se motion to substitute counsel, the sentencing judge questioned Gil and his attorney about them.[4] The attorney professed amazement at Gil's accusations, maintained that he had discussed every possible defense with his client, and declared that the government had never offered to recommend a 27–month sentence. The prosecutor affirmed that the Agreement contained the government's final offer and reminded the judge that Gil voiced no compunctions about his counsel at the change-of-plea hearing. For his part, the judge noted that Gil had evinced a good grasp of the Agreement's terms in response to queries posed at the change-of-plea hearing. Gil's answers to those queries reassured the judge that he (Gil) disavowed the existence of any pressure, disclaimed the possibility that promises (other than those reflected in the body of the Agreement) had been made to him, and expressed satisfaction with his lawyer's representation. The judge concluded that the allegations on which the motion for substitution rested were disingenuous and that Gil had knowingly and voluntarily assented to all the material terms of the Agreement.

■ We discern no clear error in this factual assessment and, therefore, descry no basis for the application of a miscarriage of justice exception. After all, a criminal defendant's disgruntlement with court-appointed counsel is not a free pass to obtaining successor counsel. Where, as here, the trial court conducts a thorough inquiry into the basis for the defendant's dissatisfaction and supportably concludes that there is no good reason for replacing the attorney, the court may deny a motion for substitution of court-appointed counsel. *See, e.g., United States v. Genao,* 281 F.3d 305, 311–14 (1st Cir.2002); *see also United States v. Allen,* 789 F.2d 90, 92 (1st Cir. 1986) (listing factors incident to appellate review of denied motions for substitution of counsel).

That ends this aspect of the matter. While the phrase "miscarriage of justice" is imprecise, that phrase plainly entails something more egregious than a simple abuse of discretion in refusing a request to appoint successor counsel. Since Gil cannot surmount even this lower hurdle, there is, *a fortiori,* no credible basis for the claim that enforcing the waiver of appellate rights would result in a miscarriage of justice.

We need go no further. For the reasons elucidated above, we find that Gil's clearly expressed waiver of his right of appeal was knowingly and voluntarily made. Coupling this finding with the fact that enforcement of the waiver does not threaten to work a miscarriage of justice, we have

---

4.  Gil is represented on appeal by different      counsel.

no principled choice but to dismiss Gil's appeal.

*Dismissed.*