# United States Court of Appeals
## For the First Circuit

No. 06-2315

UNITED STATES OF AMERICA,

Appellee,

v.

FRANCISCO CARDONA-DÍAZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Domínguez, U.S. District Judge]

Before

Torruella, Circuit Judge,
Wallace,[*] Senior Circuit Judge,
and Lipez, Circuit Judge.

Raúl S. Mariani-Franco, for appellant.
George A. Massucco-LaTaif, Assistant United States Attorney,
with whom Germán A. Rieckehoff, Assistant United States Attorney,
Rosa Emilia Rodríguez-Vélez, United States Attorney, and Nelson
Pérez-Sosa, Assistant United States Attorney, Chief, Appellate
Division, were on brief for appellee.

April 17, 2008

---

[*] Of the Ninth Circuit, sitting by designation.

**WALLACE**, <u>Senior Circuit Judge</u>.  Appellant Cardona-Díaz (Cardona) challenges the 87-month sentence he received after pleading guilty to conspiring to distribute a controlled substance. We have jurisdiction pursuant to 18 U.S.C. § 3742(a).  We dismiss Cardona's appeal, because it is barred as a result of the waiver of appeal to which he consented in his plea agreement.

**I.**

From approximately the year 2000 until he was indicted in May of 2005, Cardona was part of a group that sold cocaine, cocaine base (crack), and marijuana around Barrio Corazón in Guayama, Puerto Rico.  Cardona was a seller for one of the ringleaders.  In October 2003, Cardona and other co-conspirators sold 36 grams of crack to a Drug Enforcement Administration (DEA) confidential informant.

Cardona subsequently was indicted by a District of Puerto Rico Grand Jury and charged with violating 21 U.S.C. §§ 841(a)(1) and 846, and 18 U.S.C. § 2.  Count One alleged that from about 2000 to the date of the indictment, Cardona conspired to possess with intent to distribute five kilograms or more of cocaine and fifty grams or more of crack.  Count Three charged that, on or about October 16, 2003, Cardona and a co-defendant intentionally and unlawfully distributed five grams or more of crack.

On March 7, 2006, Cardona pled guilty to both of those counts.  The terms of Cardona's plea agreement provided for a base

offense level of thirty, pursuant to U.S. Sentencing Guideline §
2D1.1(5), "for possession and conspiracy to possess with intent to
distribute between three point five (3.5) and five (5) kilograms of
cocaine and between thirty-five (35) and fifty (50) grams of
cocaine base." [Plea Agreement, DE 147, p. 5] Cardona agreed to
both of these drug amounts in the plea agreement and at his change-
of-plea hearing.  The agreement also stipulated a three-level
reduction for acceptance of responsibility, establishing a total
offense level of 27 and a sentencing range of 70-87 months
imprisonment.  The parties did not stipulate to Cardona's criminal
history category, but the Presentence Report assigned him a
criminal history category of I.  The parties also agreed that no
further adjustments or departures were applicable, and that the
government would recommend that the court sentence Cardona to 87
months imprisonment.

Though the plea agreement stated only that the government
would *recommend* a sentence of 87 months imprisonment, during the
sentencing hearing, the district court was under the mistaken
impression that Cardona and the government had *negotiated for and
agreed to* a sentence of 87 months.  However, neither party objected
to the district court's characterization of the 87-month sentence
as that "agreed upon" by the parties.  Ultimately, the district
court adopted the parties' stipulations and sentenced Cardona to 87
months imprisonment.

-3-

The issue before us is whether Cardona's appeal is barred by the waiver contained in his plea agreement. The government urges us to enforce that waiver, as, "under ordinary circumstances, a knowing, voluntary waiver of the right to appeal from a sentence, contained in a plea agreement, ought to be enforced." United States v. Teeter, 257 F.3d 14, 23 (1st Cir. 2001) (footnote omitted). In determining whether to enforce the waiver, we make three inquiries. First, we confirm whether "the written plea agreement signed by the defendant contains a clear statement elucidating the waiver and delineating its scope." Id. at 24. Second, we determine whether the district court questioned the defendant specifically about his understanding of the waiver provision and its ramifications. Id. Third, we consider whether enforcing the waiver would work a miscarriage of justice. Id. at 25-26.

Cardona concedes that the first two parts of the Teeter test are met. The plea agreement clearly states that, as long as the court sentenced Cardona according to the terms and conditions of the plea agreement, Cardona would "waive[] and surrender[] his right to appeal the judgment and sentence in this case." [Plea Agreement at 8] Moreover, at Cardona's change-of-plea hearing, the court directed Cardona to the language of the waiver in the plea agreement and asked him if he understood the waiver, to which he

responded "yes." [Change of Plea transcript at 9]  The court also reminded Cardona of the waiver of appeal at sentencing.  Cardona's waiver of his right to appeal was therefore both knowing and voluntary, and will only be set aside if enforcing the waiver would work a miscarriage of justice.  See id.

We have consistently warned that "the miscarriage of justice reservation 'will be applied sparingly and without undue generosity.'"  United States v. De-La-Cruz Castro, 299 F.3d 5, 13 (1st Cir. 2002) (quoting Teeter, 257 F.3d at 26).  Among the factors we consider in determining whether enforcement would lead to a miscarriage of justice are "the clarity of the alleged error, its character and gravity, its impact on the defendant, any possible prejudice to the government, and the extent to which the defendant acquiesced in the result." United States v. Gil-Quezada, 445 F.3d 33, 37 (1st Cir. 2006) (citing Teeter, 257 F.3d at 26). We now consider whether honoring the waiver to deny his appeal would work a miscarriage of justice.

Cardona's only colorable claim is that the sentencing court's erroneous belief that Cardona had agreed to a sentence of 87 months requires that we remand for resentencing.[1]  At the

---

[1]   In his brief, Cardona argues that the district court improperly applied the Sentencing Guidelines in a mandatory fashion, failed to consider adequately the sentencing factors contained in 18 U.S.C. § 3553, created unwarranted sentencing disparities in relying on the crack-cocaine guideline range, and violated the parsimony principle by imposing a sentence greater than necessary to satisfy section 3553 goals.  However, these

outset, we emphasize that neither Cardona nor the government raised this issue in the initial briefing, and did so only after a supplemental briefing order was issued. Nor did the parties object at the sentencing hearing; in fact, both the government and Cardona apparently went along with the district court's assertion that Cardona had agreed to an 87-month sentence, despite the fact that Cardona's plea agreement stated only that the government would *recommend* an 87-month sentence.

The court's misunderstanding of the agreement reached between Cardona and the government is troubling. The court emphasized that a major factor in its decision to impose an 87-month sentence was "that the parties bargained for 87 months," and stated that "the court see[s] no reason why the court should at this time depart from what the parties agreed. This was a negotiation. . . . So, therefore, I am going to follow what the parties originally bargained." [Sent. Tr. 27-29]

The government made no effort to correct the district court's misunderstanding. In fact, the government arguably misled the court when it stated that the 87-month sentence was "what was bargained for and agreed to by the parties." [Sent. Tr. 24] We are

garden-variety challenges to Cardona's sentence are too trivial to warrant discussion in light of Cardona's waiver of appeal. Although we do not foreclose the possibility that the errors Cardona alleges could in other circumstances rise to the level of a miscarriage of justice, our review of the record in this case satisfies us that there was no such miscarriage here.

equally dismayed that Cardona's own counsel was silent in the face of the misunderstanding.

However, it has not been demonstrated to our satisfaction that this error would work a miscarriage of justice if we were not to remand. Cardona's waiver of his right to appeal in his plea agreement, his failure to object to the district court's misunderstanding of the plea agreement at the hearing (and apparent acquiescence in that misunderstanding), and his failure to raise the issue on appeal until directed by us, establish a very high hurdle for him to show the kind of error that would permit us to entertain his argument and consider reversal. He cannot overcome that hurdle in this appeal.

As indicated earlier, Teeter outlined the various inquiries that we consider in determining whether enforcement of a plea agreement would lead to a miscarriage of justice. Though some of the Teeter factors weigh in Cardona's favor, others suggest that we should enforce the waiver and dismiss his appeal. First, that Cardona "acquiesced in the result" suggests that we should enforce the waiver. See Gil-Quezada, 445 F.3d at 37. Additionally, the error may have influenced the high-end guidelines sentence Cardona received, but we cannot be certain that the court would not have imposed a similar sentence anyway. Although the district court relied in part on its mistaken understanding that both sides agreed to an 87-month sentence, it appears to have imposed the high

sentence based on the drug quantities of both crack and cocaine to which Cardona stipulated, and based on uncharged conduct including possession of marijuana and possession of a large amount of ammunition. Finally, although the district court would have been free to reject the government's recommendation (just as it was free to reject an "agreed upon" sentence), we have recognized that when parties agree that the government will recommend a certain sentence, they do so with the understanding that it is likely the district court will accept the recommendation. See United States v. Velez Carrero, 77 F.3d 11, 11-12 (1st Cir. 1996). Thus, the limited "character and gravity" of the alleged error, as well as its questionable "impact on the defendant," suggest that we should enforce the waiver. See Gil-Quezada, 445 F.3d at 37. We therefore conclude there is no miscarriage of justice; we enforce the appeal waiver agreed to by the parties.

## III.

Because Cardona agreed to a valid waiver of his right to appeal his sentence, and because none of the errors he alleged worked a miscarriage of justice, we will enforce the waiver and dismiss his appeal.

**DISMISSED.**