# United States Court of Appeals
## For the First Circuit

Nos. 07-1238
     07-1239

UNITED STATES OF AMERICA,

Appellee,

v.

VICTOR S. ACOSTA-ROMAN,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Dominguez, U.S. District Judge]

Before

Torruella and Lipez, Circuit Judges,
and DiClerico,* Senior District Judge.

    Vivianne M. Marrero, with whom Joseph C. Laws, Jr., Federal
Public Defender, and Victor J. Gonzalez-Bothwell, Assistant Federal
Public Defender, were on brief for appellant.
    Germán A. Rieckehoff, Assistant United States Attorney, with
whom Rosa E. Rodríguez-Vélez, United States Attorney, and Nelson
Pérez Sosa, Assistant United States Attorney, were on brief for
appellee.

November 24, 2008

_____

*Of the District of New Hampshire, sitting by designation.

**DICLERICO, District Judge.** Victor Acosta-Roman pled guilty, pursuant to a written plea agreement, to three money laundering counts and received three concurrent fifty-seven month sentences. On appeal, he contends that the district court erred in adding a six-level enhancement under U.S.S.G. § 2S1.1(b)(1) and that the waiver provision in his plea agreement does not bar his appeal. The government contends that the appeal should be dismissed because Acosta waived his right to appeal.

## I.  Background

In April of 2005, indictments were returned in two cases charging Acosta, his wife, and others with conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h), substantive money laundering in violation of 18 U.S.C. § 1956(a), and conspiracy to import narcotics in violation of 21 U.S.C. § 952 and § 963. After the cases were consolidated, Acosta pled guilty to two counts of conspiracy to commit money laundering and one count of money laundering. In pleading guilty, Acosta admitted that from August of 2002 through January of 2005, and from December of 2002 to October of 2004, he conspired with others to conduct financial transactions involving the proceeds of illegal drug dealings, that the transactions were designed to conceal the source of the proceeds, and that he knew the proceeds were from unlawful activity in violation of § 1956(h).[1] He also admitted that on September 25,

_____

[1]Although Acosta pled guilty to laundering the proceeds of illegal drug dealings and admitted that he knew the funds were the proceeds of unlawful activity, he did not admit that he knew, at

-2-

2003, he engaged in laundering $139,426.00 in violation of § 1956(a)(1)(B)(I) and § 1956(a)(2).

Acosta's plea agreement recited the maximum penalties applicable to those counts, warned that the court was not bound by the plea agreement, and stated that the sentence would be left to the court's discretion. Acosta and the government agreed to advisory guideline sentencing calculations that provided a base offense level of eight, a twelve-level upward adjustment under U.S.S.G. § 2B1.1(b)(1)(G), a two-level increase because of the violation of § 1956, and a three-level downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1. They did not agree on an adjusted offense level, and the agreement stated that Acosta's total offense level would be determined by the court at sentencing based upon the court's rulings on "certain sentencing factors."

The plea agreement further provided that at sentencing the government would argue in favor of a six-level enhancement under U.S.S.G. § 2S1.1(b), while Acosta would argue against the enhancement. The agreement included a provision titled "WAIVER OF APPEAL," which provided that "[t]he defendant hereby agrees that if this Honorable Court accepts this agreement and sentences hi[m] according to its terms and conditions, defendant waives and

---

the time, that illegal drug dealings were the source of the money involved in those transactions.

surrenders [his] right to appeal the conviction and sentence in this case."

The sentencing hearing took place over a period of four days. The court addressed the enhancement issue under U.S.S.G. § 2S1.1(b), which provides for an increase of six levels if the defendant knew or believed that any of the laundered funds were the proceeds of, among other things, an offense involving illegal drugs. The government presented the testimony of two DEA undercover agents, Diaz and Rivera, who participated in the investigation that led to Acosta's arrest. They testified about the money laundering operations and the circumstances that implicated Acosta. In particular, the agents testified about Acosta's involvement, with his wife, in delivering large amounts of cash on three occasions.

Acosta also testified at the hearing. He admitted that he knew the money was obtained unlawfully, but he denied any knowledge of the source of the money. He also denied the circumstances described by Agent Rivera, which suggested that he would have knowledge that the money was drug proceeds.

Based on the evidence presented during the sentencing hearing, the court concluded that Acosta's testimony, denying knowledge of the source of the money, was not credible. The court credited Agent Rivera's testimony and concluded, by a preponderance of the evidence, that Acosta knew the money he delivered for laundering was illegal drug proceeds. The court imposed a six-

level enhancement under § 2S1.1(b). Acosta was sentenced to three fifty-seven month terms to be served concurrently.

## II. Discussion

On appeal, Acosta contends that the district court erred in applying the six-level enhancement under U.S.S.G. § 2S1.1(b) because the evidence did not support a finding that he knew the money he delivered for laundering was illegal drug proceeds. He argues that the waiver of appeal provision in his plea agreement does not bar his appeal because the waiver applies only to the terms and conditions of the agreement and not to the enhancement imposed at sentencing. The government asserts that the waiver applies and that the appeal must be dismissed.

Before considering the merits of Acosta's claim, we must determine whether the waiver of appeal provision is enforceable under the circumstances of this case. United States v. Miliano, 480 F.3d 605, 607 (1st Cir. 2007). "'[U]nder ordinary circumstances, a knowing, voluntary waiver of the right to appeal from a sentence, contained in a plea agreement, ought to be enforced.'" United States v. Cardona-Diaz, 524 F.3d 20, 22 (1st Cir. 2008) (quoting United States v. Teeter, 257 F.3d 14, 23 (1st Cir. 2001)). When its validity is challenged, a waiver is tested by considering whether the waiver statement and its scope are sufficiently clear, whether the district court questioned the defendant as to his understanding of the waiver and informed him of its ramifications, and whether enforcing the waiver would cause a

miscarriage of justice.  <u>United States</u> v. <u>Chandler</u>, 534 F.3d 45, 49 (1st Cir. 2008).

In this case, however, Acosta does not challenge the validity of his waiver or assert that its enforcement would work a miscarriage of justice.[2]  <u>Cf.</u> <u>United States</u> v. <u>Edelen</u>, 539 F.3d 83, 85 (1st Cir. 2008) (defendant argued waiver was involuntary and unknowing); <u>Chandler</u>, 534 F.3d at 49 (defendant argued district court's description of waiver inadequate); <u>Cardona-Diaz</u>, 524 F.3d at 22-23 (defendant argued miscarriage of justice).  Instead, Acosta asserts that under its terms, the waiver does not apply to his appeal of the U.S.S.G. § 2S1.1(b) enhancement issue.

"Even a knowing and voluntary appeal waiver only precludes appeals that fall within its scope."  <u>United States</u> v. <u>McCoy</u>, 508 F.3d 74, 77 (1st Cir. 2007).  "[T]he scope of the waiver is simply a matter of what the parties agreed to in the particular case."  <u>Id.</u>  Plea agreements are construed under basic contract principles.  <u>United States</u> v. <u>Newbert</u>, 504 F.3d 180, 185 (1st Cir. 2007).

The waiver provision in Acosta's plea agreement states that he waived his right to appeal his conviction and sentence "if the Honorable Court accepts this agreement and sentences [Acosta]

---

[2]At oral argument, counsel addressed the waiver under contract principles and explicitly declined to pursue any issue that the waiver was invalid or that enforcement would constitute a miscarriage of justice.

according to its terms and conditions."[3] Acosta contends that the waiver does not apply to the U.S.S.G. § 2S1.1(b) enhancement because the enhancement was not a term or a condition of the plea agreement.

In Section 7, the agreement addresses "Sentencing Guideline Calculations" and provides specific sentencing terms and conditions. The government and Acosta agreed to a base offense level, an upward adjustment based on the amount of the loss, an increase in the base offense level due to a violation of § 1956, and a downward adjustment for acceptance of responsibility. They also agreed, at Subsection 7(d), that at the time of the sentencing, they would each argue their differing positions on the U.S.S.G. § 2S1.1(b) enhancement issue. In Subsection 7(f), the parties agreed that Acosta's total offense level would be "determined at sentencing based on the Court's ruling on certain sentencing factors."

At the sentencing hearing, the government and Acosta presented evidence and argument concerning the enhancement issue, as contemplated by the plea agreement. No issue has been raised

---

[3]We have previously determined that the same waiver provision is "simple and easily understood" and "clear and self-evident on its face." United States v. Borrero-Acevedo, 533 F.3d 11, 14 & 17 (1st Cir. 2008), cert. denied, --- S. Ct. ---, 2008 WL 4580034 (Nov. 10, 2008). Nevertheless, the frequency of appeals involving waivers suggests that waiver provisions should make specific reference to any terms and conditions of the plea agreement that are not intended by the parties to be covered by the waiver. Hopefully, such specificity would reduce the number of appeals in which plea agreement waivers are at issue.

here challenging the adequacy of Acosta's opportunity to be heard during the hearing. The court ruled, based on the evidence and arguments presented during the sentencing hearing, that Acosta knew the laundered funds were illegal drug proceeds. Based on its ruling, the court imposed a six-level enhancement under U.S.S.G. § 2S1.1(b).

Taking the language of the plea agreement as a whole, there is nothing to suggest that the parties' agreement at Subsection 7(d), to argue the enhancement issue at the sentencing hearing, was not a term or condition of the plea agreement. Further, the agreement did not guarantee a particular outcome on the enhancement issue and instead provided that the total offense level would be determined at sentencing, based on the court's ruling on certain sentencing factors, which were left to the discretion of the court. In imposing sentence after the parties had the opportunity to argue the enhancement issue, the court complied with the condition agreed to in Subsection 7(d). Therefore, the sentence, including the six-level enhancement under U.S.S.G. § 2S1.1(b)(1), was imposed according to the terms and conditions of the plea agreement.

### III. Conclusion

For the foregoing reasons, Acosta's waiver is both valid and enforceable as to the enhancement issue, and therefore, appellate consideration of that issue, on the merits, is barred.

**The appeal is <u>dismissed</u>**.