# United States Court of Appeals
## for the First Circuit

No. 08-1024

UNITED STATES OF AMERICA,

Appellee,

v.

LUIS GONZÁLEZ-COLÓN,

Defendant, Appellant.

No. 08-1069

UNITED STATES OF AMERICA,

Appellee,

v.

ROBERTO DE LEÓN-MARTÍNEZ,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. José A. Fusté, U.S. District Judge]

Before
Torruella, Selya, and Tashima,[*]
Circuit Judges.

Linda A. Backiel for appellant González-Colón.
Michael Raymond Hasse for appellant De León-Martínez.

---

[*]    Of the Ninth Circuit, sitting by designation.

Thomas F. Klumper, Assistant United States Attorney, with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, and Nelson Pérez-Sosa, Assistant United States Attorney, Chief Appellate Division, were on brief, for appellee.

———————————————

September 14, 2009

———————————————

**Tashima**, <u>**Senior Circuit Judge**</u>. Appellant Luis González-Colón ("González") appeals the 97-month sentence he received after pleading guilty to conspiring to distribute a controlled substance. Appellant Roberto De León-Martínez ("De León") appeals a 24-month sentence he received for the same charge. We have jurisdiction under 18 U.S.C. § 3742(a), and dismiss the appeals of both appellants, because each signed a valid and enforceable waiver of appeal in his respective plea agreement.

## I. Factual and Procedural Background

From approximately February 2005 until their indictment on December 20, 2006, González and De León participated in a conspiracy with ten others to distribute cocaine base ("crack") in Guayama, Puerto Rico. The two entered into plea agreements with the government and on September 18, 2007, González pled guilty to conspiracy to possess with intent to distribute at least 35, but less than 50, grams of cocaine base in violation of 21 U.S.C. §§ 841 (a) (1), 841(b)(1)(B), and 846. On the same date, De León pled guilty to conspiracy to possess with intent to distribute at least 4, but less than 5, grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 846.

The terms of González's plea agreement provided for a total offense level of 29. The parties did not stipulate to any criminal history category, but presumed a category of III, yielding a guideline range of 108-135 months' imprisonment. Under a section

titled "Sentencing Agreement," the agreement stated, "The parties agree to recommend a term of imprisonment of one hundred eight (108) months or the lower end of the applicable guideline range, whichever is greater."

In calculating the applicable criminal history category, the Presentence Investigation Report ("PSI") for González noted that on July 11, 2006, González had been sentenced by the Superior Court in Puerto Rico to three consecutive five-year terms of imprisonment for drug arrests dating from November 4, 2004, August 1, 2005, and January 30, 2006. The commonwealth court had suspended the sentences and placed González on probation. Concluding that González was therefore on probation for a prior sentence at the time he committed the instant offense, the PSI added two points to González's criminal history score pursuant to U.S.S.G. § 4A1.1(d), resulting in a criminal history category of II.

At his sentencing hearing, González challenged the PSI's recommendation of a criminal history category of II, arguing that because the two specific drug transactions named in the plea agreement occurred on March 2 and April 11, 2006, they predated the state court's imposition of probation on July 11, 2006, and thus two points should not have been added under U.S.S.G. § 4A1.1(d). The court denied the motion.

The court then noted that with a criminal history category of II, and a total offense level of 27,[1] the Guidelines recommended a range of 78 to 97 months.  At that point, González's counsel stated that the plea agreement called for a sentence of "108 [months] or the upper end of the applicable guideline."  In fact, the sentencing agreement called for 108 months or the lower end of the applicable guideline, whichever was greater — meaning 108 months minimum.  Neither party noted or objected to the misstatement, and the district court sentenced González to 97 months.

As for De León, the terms of his plea agreement yielded a total offense level of 19.  The parties agreed to neither a criminal history category nor a particular guideline sentence, agreeing only to "argue for a sentence within the applicable guideline range."

The PSI calculated a criminal history category of I, leading to a guideline range of 24 to 30 months.  The district court sentenced De León to 24 months' imprisonment.

Both plea agreements, for González and for De León, contained a waiver of the right to appeal the judgment and sentence, providing, "The defendant hereby agrees that if this Honorable Court accepts this agreement and sentences him according to its

---

[1]     The district court reduced the offense level calculation from the plea agreement following the November 1, 2007, amendments to the Guidelines.

terms and conditions, defendant waives and surrenders his right to appeal the judgment and sentence in this case."

González nonetheless appeals his sentence, arguing that the district court sentenced him on the basis of "faulty memory" and under an incorrect calculation of his criminal history category. De León also appeals, arguing that the district court impermissibly participated in plea bargain discussions.

## II. Discussion

### González-Colón

We must first determine whether González's appellate waiver is valid and enforceable. Concluding that it is, we decline to reach the merits of his appeal.

In United States v. Teeter, 257 F.3d 14 (1st Cir. 2001), we established the standard for reviewing appellate waivers, and held that such waivers are binding and enforceable so long as: (1) the written plea agreement clearly delineates the scope of the waiver; (2) the district court specifically inquired at the plea hearing about the waiver, and the questioning of the defendant suffices to show that the waiver was knowing and voluntary; and (3) the denial of the right to appeal would not constitute a miscarriage of justice. Id. at 24-25. We must also be satisfied that the appeal falls within the scope of the waiver. See United States v. Acosta-Roman, 549 F.3d 1, 3 (1st Cir. 2008).

The first Teeter factor is easily met. The language of the waiver, quoted above, has been upheld in nearly identical iterations, and González effectively concedes this point. See United States v. De-La-Cruz Castro, 299 F.3d 5, 10 (1st Cir. 2002).

On the second Teeter factor, González argues that the district court failed to describe or discuss the waiver in any way. The record belies this assertion. The district court twice queried González about the waiver at the change-of-plea hearing, and used clear language in doing so ("Do you understand that by pleading guilty, you will be held accountable to the waiver of appeal clause that appears in your respective plea agreements?"). It also asked about the waiver again at the sentencing hearing, and used no misleading or contradictory language at any time. Accordingly, the second Teeter factor is satisfied. See United States v. Gil-Quezada, 445 F.3d 33, 37 (1st Cir. 2006); De-La-Cruz Castro, 299 F.3d at 11-12.

On the third Teeter factor, González claims that enforcing the waiver would amount to a miscarriage of justice, because the district court erred in calculating his criminal history category.[2]

_____

[2] González also argues for a miscarriage of justice because the district court acted with a "faulty memory" in sentencing him to 97 months, a deviation from the sentencing recommendation in the plea agreement. Because, however, the plea agreement called for a minimum of 108 months, we fail to see how the defendant's windfall amounts to a miscarriage of justice. The better argument on this issue — though not by much — is that the deviation means the sentence is outside of the scope of the waiver, and therefore the waiver is inapplicable. We address this argument below.

González argues that two points should not have been added to his criminal history score pursuant to U.S.S.G. § 4A1.1(d) for committing the instant offense while on probation for a prior sentence, because the federal conspiracy indictment "encompassed" all the transactions at issue in the July 11, 2006, commonwealth court proceeding. Therefore, his thesis runs, the commonwealth court sentence was not a "prior sentence" under U.S.S.G. § 4A1.2,[3] and the probation resulting from it may not be counted under U.S.S.G. § 4A1.1(d).

In reviewing González's argument, we note that the miscarriage of justice exception should be applied "sparingly and without undue generosity." Teeter, 257 F.3d at 26. Relevant factors include "the clarity of the alleged error, its character and gravity, its impact on the defendant, any possible prejudice to the government, and the extent to which the defendant acquiesced in the result." Gil-Quezada, 445 F.3d at 37 (citing Teeter, 257 F.3d at 26).

Several of those factors militate against invoking the exception in this case.

First, González failed to raise this issue before the district court, despite having ample opportunity to detail the reach and

---

[3] U.S.S.G. § 4A1.2(a)(1) defines a "prior sentence" as "any sentence previously imposed upon adjudication of guilt...for conduct not part of the instant offense."

scope of the state conviction.[4]  We are wary of invoking the miscarriage-of-justice exception when the defendant could have raised an argument below but did not.  See United States v. Cardona-Diaz, 524 F.3d 20, 23-24 (1st Cir. 2008); see also United States v. Edelen, 539 F.3d 83, 87 (1st Cir. 2008) ("If the mere fact that a defendant has arguments he could potentially invoke on appeal were allowed to invalidate a waiver, then appellate waivers would become meaningless.").

Second, González seeks to anchor his new claim to proceedings in commonwealth court that postdate the sentencing in this case — specifically, a recent state court probation revocation hearing that concluded the commonwealth and federal charges were the "same."  However, "post-sentencing maneuvers ordinarily cannot be used as history-altering devices," and thus this court strongly disfavors granting relief on the basis of a record not before the district court.  See United States v. Mateo, 271 F.3d 11, 15 (1st Cir. 2001).

---

[4]     Indeed, before the district court, González argued for something like the reverse: that because the "instant offense" included only the March and April 2006 drug sales detailed in the plea agreement, it predated the state court's imposition of probation on July 11, 2006, and therefore adding two points pursuant to U.S.S.G. § 4A1.1(d) was error.  The district court properly concluded that because the instant offense was a conspiracy, it did not end until the December 20, 2006, indictment, see United States v. Hernandez, 541 F.3d 422, 425 (1st Cir. 2008), at which point González had already been placed on probation by the commonwealth court.

Third, it is debatable — if not doubtful — whether a different calculation of González's criminal history category would have affected the final sentence. Because González failed to raise this argument below, the plain error standard is incorporated into our assessment of the miscarriage-of-justice element. Thus González must show not merely that the error "*could have* changed the outcome," but rather that "the error *must have* done so." United States v. Albanese, 287 F.3d 226, 229 n.1 (1st Cir. 2002) (quoting United States v. Sposito, 106 F.3d 1042, 1049-50 (1st Cir. 1997)) (applying plain error standard to alleged miscalculation of criminal history category).

In this case, the sentencing agreement called for a minimum of 108 months' imprisonment — regardless of the final criminal history category. Moreover, "we have recognized that when parties agree that the government will recommend a certain sentence, they do so with the understanding that it is likely the district court will accept the recommendation." Cardona-Diaz, 524 F.3d at 24. Therefore, even if the district court had calculated a different criminal history category, "we cannot be certain that the court would not have imposed a similar sentence anyway." Id. Indeed, it may have imposed a higher sentence in accord with the plea agreement's recommendation of a 108-month minimum. González's failure to show the probability of a different sentence militates against finding a miscarriage of justice. Id.

Finally, we would also note that, on the merits of González's challenge, the July 11, 2006, commonwealth court sentence included a five-year term of imprisonment for marijuana charges following a November 4, 2004, arrest in Guayama, which predates the beginning of the federal conspiracy by three months. Thus, whether the probation was properly counted as a "prior sentence" under U.S.S.G. § 4A1.2 is unclear at best.

Assessing these factors in total, we conclude that the "limited character and gravity" of the alleged error, its uncertain impact on the final sentence, the defendant's failure to raise the issue below, and the defendant's reliance on post-sentence proceedings suggest that there is no miscarriage of justice in enforcing the waiver. See Cardona-Diaz, 524 F.3d at 24. Finding all of the Teeter factors satisfied, we conclude that the waiver is valid and enforceable.

Lastly, González argues that, even if the waiver is valid and enforceable, this appeal does not come within its scope, because the district court did not sentence the defendant according to the plea agreement's "terms and conditions." Instead, the district court acted with "faulty memory" in deviating from the sentencing recommendation, and hence the waiver never took effect.

This argument has little traction. For one, the plea agreement called only for a recommendation to be made to the judge and, insofar as the agreement was presented to him, the

recommendation was made.  For another, the defendant's counsel was complicit in the mistake about the terms of the agreement, misquoting the sentencing recommendation to omit the fact that 108 months was to be the minimum sentence.  Finally, the defendant obviously benefitted from the mistake.  A district court that imposes a sentence lower than that recommended by the plea agreement, yet acquiesced to by both parties, cannot in any sense be said to have exceeded the "terms and conditions" of the agreement.  See, e.g., Acosta-Roman, 549 F.3d at 4 (district court exercising discretion that was contemplated by the plea agreement did not exceed the "terms and conditions" of that agreement).

We therefore enforce the appeal waiver agreed to by the parties.

**De León-Martínez**

We apply the same Teeter analysis to the contentions of De León.  De León does not dispute that the first two Teeter factors are met in his case.  Rather, he argues that enforcing the waiver would be a miscarriage of justice, because the district court impermissibly inserted itself into the plea bargaining process, in violation of Fed. R. Crim. P. 11(c).  De León points to three such incidents that ostensibly violate the Rule, but none withstands close scrutiny.

First, during a status conference, the court inquired into the likelihood of a plea bargain and then stated, "I'm

available to discuss the case any time. You just let me know." We fail to see how such an innocuous comment constitutes impermissible intervention in the plea bargaining process, and in any event, "a single brief remark during negotiations [has] been held not to constitute impermissible judicial participation in plea discussions." United States v. Bradley, 455 F.3d 453, 462 (4th Cir. 2006); see also United States v. Uribe-Londono, 409 F.3d 1, 4 (1st Cir. 2005) (holding there was no error when court "simply inquired about the status of any plea negotiations").

Second, at the change of plea hearing, after the parties had reached a plea agreement, De León's counsel voiced his concern that, notwithstanding the plea agreement's recommendation of a 30-month minimum sentence, an impending change to the Guidelines might yield a lower sentencing calculation. In response, the court reiterated that it had final authority over the sentence, and indicated it would schedule the sentencing hearing for November 15, 2007, after any change to the Guidelines had taken effect.

Informing the defendant about the court's authority and calendaring options after a plea agreement had been reached does not constitute "participation" in the plea bargaining process in any way. "Because the plea negotiations between the parties had come to an end and the parties had signed a written plea agreement before the district judge was involved, it is hard to characterize

the judge's comments as participation in any [plea] discussions." United States v. Cannady, 283 F.3d 641, 644 (4th Cir. 2002).

Finally, at a hearing on De León's motion for new counsel conducted a week prior to sentencing, the court questioned the defendant about his dissatisfaction with counsel, reiterated that the court had ultimate sentencing authority over the defendant, and praised the defendant's counsel. Nothing forbids a court "from questioning the defendant regarding the terms, consequences, and acceptance of the plea agreement or from providing the defendant with information relating to these matters," and we perceive no error here. See United States v. Carver, 160 F.3d 1266, 1269 (10th Cir. 1998); see also United States v. Hicks, 531 F.3d 49, 53-54 (1st Cir. 2008) (court's assurances about counsel's competence did not amount to judicial participation in plea negotiations).

Thus, we conclude that there is no miscarriage of justice, and we enforce the appeal waiver agreed to by the parties.

### III. Conclusion

Because both appellants agreed to valid and enforceable waivers of their rights to appeal their sentences, we will enforce the waivers and dismiss the appeals.

**APPEALS DISMISSED.**