B-A. v. Garland

BIA
Palmer, IJ
A213 140 772/773

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 28th day of February, two thousand twenty-four.

PRESENT:

> ROBERT D. SACK,
> RICHARD J. SULLIVAN,
> EUNICE C. LEE,
> > *Circuit Judges.*

_____

Y. M. B-A., MARIA ERMELINDA
BAIRES-AREVALO,
> *Petitioners,*

> v.                                                              21-6382
>                                                                 NAC

MERRICK B. GARLAND, UNITED
STATES ATTORNEY GENERAL,
> *Respondent.*

_____

**FOR PETITIONERS:**        Bruno J. Bembi, Hempstead, NY.

**FOR RESPONDENT:**        Brian Boynton, Principal Deputy Assistant Attorney General; Kohsei Ugumori, Senior Litigation Counsel; Aric A. Anderson, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioners Maria Ermelinda Baires-Arevalo ("Baires-Arevalo") and her minor child Y.M., natives and citizens of El Salvador, seek review of a decision of the BIA affirming a decision of an Immigration Judge ("IJ") that denied Petitioners' request for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").[1] *In re Maria Ermelinda Baires-Arevalo, Y. M. B-A.*, Nos. A 213 140 772/773 (B.I.A. June 11, 2021), *aff'g* Nos. A 213 140 772/773 (Immigr. Ct. N.Y.C. Mar. 27, 2019). We assume the parties' familiarity with the underlying facts and procedural history.

---

[1] Because Y.M. was a derivative applicant on Baires-Arevalo's asylum application, we primarily refer only to Baires-Arevalo throughout this Order, as Y.M.'s eligibility for relief is based on his mother's claims.

2

Where the BIA adopts and affirms the IJ's decision, we review the IJ's decision as if it were that of the BIA. *See Mei Chai Ye v. U.S. Dep't of Just.*, 489 F.3d 517, 523 (2d Cir. 2007). We review questions of law and the application of law to facts *de novo* and review the agency's factual findings to determine whether they are supported by substantial evidence. *See Ojo v. Garland*, 25 F.4th 152, 159–60 (2d Cir. 2022). "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

In her asylum application, Baires-Arevalo claimed that an MS-13 gang member – known as "El Seco" – stalked her in an attempt to convince her to consent to a sexual relationship with him, threatened to kill her and Y.M. when she refused, and attempted to kidnap Y.M. She argues that she is eligible for asylum and withholding of removal because of her membership in the social group of "young Salvadoran wom[e]n who ha[ve] resisted the sexual advances of a gang member" and because of her imputed anti-gang political opinion. Certified Admin. Record at 91; *see also* Pet. Br. at 8–23. She additionally argues that she is entitled to CAT relief in light of the "past persecution" she suffered and the "extensive background country information in the record regarding femicide

3

and rape perpetrated on young women by . . . gangs." Pet. Br. at 27.

## I. Asylum and Withholding of Removal

An applicant for asylum and withholding of removal must establish past persecution or a well-founded fear of future persecution – or, in the case of withholding of removal, a likelihood of future persecution – and that "race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant." 8 U.S.C. § 1158(b)(1)(B)(i); *see also id.* § 1231(b)(3)(A); 8 C.F.R. §§ 1208.13(b), 1208.16(b); *Quituizaca v. Garland*, 52 F.4th 103, 113–14 (2d Cir. 2022) (holding that the "one central reason" standard applies to both asylum and withholding of removal claims). In order to qualify as persecution, the conduct identified must be "attributable to the government, whether directly because engaged in by government officials, or indirectly because engaged in by private persons whom the government is unable or unwilling to control." *Scarlett v. Barr*, 957 F.3d 316, 328 (2d Cir. 2020) (internal quotation marks omitted). An applicant can show that the relevant government was unable or unwilling to control private acts through "evidence of an inability on the part of the government to prevent the acts" or "evidence that government actors condoned the acts." *Aliyev v. Mukasey*, 549 F.3d

4

111, 116 (2d Cir. 2008) (internal quotation marks omitted).

Baires-Arevalo testified that, shortly after she moved to San Salvador to be closer to Y.M.'s cancer treatment center, El Seco began making vulgar remarks and gestures towards her when she passed him in the neighborhood. She further testified that, as time went on, El Seco became more aggressive and began following her, telling her that if she did not "give him what he wanted," he would kill her and her son. Certified Admin. Record at 98–99. According to Baires-Arevalo, her last interaction with El Seco was when he followed her to the bus stop and grabbed her son, threatening to kidnap him if she did not accede to his sexual advances. She claimed that, upon seeing a police car, El Seco "withdrew" from this altercation and "fled" the scene. *Id.* at 101, 110. When she told the police officers about the incident, they declined to take any action because they were "off duty" and instructed her "to go to the police station to make a complaint." *Id.* at 103. Baires-Arevalo asserted that she never made a formal complaint because she thought it would be too "difficult to get [the police] to do something." *Id.*

Because Baires-Arevalo's claims concern the conduct of a private actor, she had the burden of establishing that governmental authorities were unwilling or unable to intervene. *See Scarlett*, 957 F.3d at 328. The agency did not err in

concluding that she failed to meet this burden. Here, the record reflects that police officers instructed Baires-Arevalo to file a formal complaint against El Seco, thereby demonstrating a willingness to protect her. *See id.* at 330 (concluding that police were willing to control gangs because they warned petitioner about impending gang violence). Moreover, Baires-Arevalo's testimony that El Seco fled the scene upon seeing the police car indicates that the police were able to effectively protect her from gang violence. Given this record evidence – as well as the fact that Baires-Arevalo chose not to file a formal incident report despite the officers' recommendation – we cannot say that the agency erred in concluding that Baires-Arevalo's assertions that the police were unwilling to help her at the time of the altercation and would have been unwilling to help her after the fact were speculative. *See Jian Xing Huang v. INS*, 421 F.3d 125, 129 (2d Cir. 2005) ("In the absence of solid support in the record . . . [an applicant's] fear is speculative at best.").

Furthermore, contrary to Petitioners' contention, the country conditions evidence did not establish that the authorities would be unable or unwilling to protect someone in Baires-Arevalo's position. Indeed, although the country reports in the record reflect that homicide rates for women are among the highest

6

in the region and that women are afraid to report incidents of domestic violence out of fear that gangs are monitoring police units, they also reflect that the government has taken steps to combat gang violence and to protect women by, among other things, creating special police units, courts, shelters, and support centers.

Baires-Arevalo's failure to show that authorities would be unable or unwilling to control El Seco is dispositive of her asylum and withholding of removal claims. *See Scarlett*, 957 F.3d at 333 ("[W]hen an applicant's well-founded fear pertains to private violence . . . h[er] ability to claim persecution depends on showing that the government is unwilling or unable to protect h[er] against that violence."). We therefore need not reach the agency's alternative determination that Baires-Arevalo failed to establish that her persecution was or would be connected to a protected ground. *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").

## II.  CAT Relief

An applicant for CAT relief must demonstrate that "it is more likely than not that . . . she would be tortured if removed to the proposed country of removal."

7

8 C.F.R. § 1208.16(c)(2). "Torture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from . . . her or a third person information or a confession, punishing . . . her for an act . . . she or a third person has committed or is suspected of having committed, intimidating or coercing . . . her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by, or at the instigation of, or with the consent or acquiescence of, a public official acting in an official capacity or other person acting in an official capacity." *Id.* § 1208.18(a)(1).[2] "In assessing whether it is more likely than not that an applicant would be tortured," the agency must consider "all evidence relevant to the possibility of future torture," including "[e]vidence of past torture inflicted upon the applicant," the applicant's ability to relocate within the country, "[e]vidence of gross, flagrant[,] or mass violations of human rights within the country of removal," and "[o]ther relevant information regarding conditions in the country of removal." *Id.* § 1208.16(c)(3).

Baires-Arevalo testified that El Seco verbally harassed her, followed her,

---

[2] We refer to the version of the regulations in place at the time of the agency's decision. *See Garcia v. Garland*, 64 F.4th 62, 67 n.3 (2d Cir. 2023).

threatened her, occasionally grabbed her hands, and once grabbed her son. Her testimony was clear, however, that El Seco only began targeting her after she moved to San Salvador. She also testified that El Seco approached her mother after she left El Salvador, but indicated that he only inquired as to her whereabouts without making any threats. Given the lack of evidence demonstrating that El Seco ever harmed Baires-Arevalo in a manner that would constitute torture or, as discussed above, that any public official would acquiesce in such conduct, the IJ did not err in concluding that Baires-Arevalo did not establish that it was more likely than not that El Seco would torture her with the government's acquiescence if she returned to El Salvador. *See Savchuck v. Mukasey*, 518 F.3d 119, 123 (2d Cir. 2008) ("It is the likelihood of all necessary events coming together that must more likely than not lead to torture, and a chain of events cannot be more likely than its least likely link." (internal quotation marks omitted)).

*     *     *

For the foregoing reasons, the petition for review is DENIED.  All pending

motions and applications are DENIED and stays VACATED.

                              FOR THE COURT:
                              Catherine O'Hagan Wolfe,
                              Clerk of Court

10